**SMITH, Registrar, v. AMERICAN ASIATIC UNDERWRITERS, FEDERAL, Inc., U. S. A.**

No. 9642.

Circuit Court of Appeals, Ninth Circuit.

April 17, 1942.

Rehearing Granted Aug. 8, 1942.

Leighton Shields, Dist. Atty., U. S. Court for China, of Shanghai, China, and Frank J. Hennessy, U. S. Atty., and Robert B. Mc-Millan, Asst. U. S. Atty., both of San Francisco, Cal. (Francis M. Shea, Asst. Atty. Gen., Sidney J. Kaplan, Sp. Asst. to Atty. Gen., and J. Frank Staley, Atty., Department of Justice, of Washington, D. C., of counsel), for appellant.

Herbert W. Clark, of San Francisco, Cal., George F. Richardson, of New York City (Garrett H. Elmore and Morrison, Hohfeld, Foerster, Shuman & Clark, all of San Francisco, Cal., of counsel), for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant, A. Viola Smith, a China Trade Act registrar, seeks reversal of a declaratory judgment obtained by appellee, American Asiatic Underwriters, Federal Inc. U. S. A., a China Trade Act corporation, in a suit by appellee against appellant in the United States Court for China.[1]

Appellant is an officer of the Department of Commerce. She was designated as China Trade Act registrar by the Secretary of Commerce. Her official station is at Shanghai, China. Her functions are administered under the supervision of the Secretary. Any action of hers may, upon appeal to the Secretary, be affirmed, modified or set aside by the Secretary as he deems advisable.[2]

Appellee was incorporated in 1925. Being a China Trade Act corporation, appellee was prohibited from engaging in any form of insurance business.[3] In or prior to 1931, appellee acquired shares of the capital stock of two corporations—Asia Life Insurance Company and International Assurance Company, Limited—each of which was engaged in the insurance business. In 1932 a controversy arose between appellee and the Secretary of Commerce as to the effect of appellee's ownership of said shares, the Secretary contending that such ownership constituted engaging in a form of insurance business; appellee contending that it did not.

To settle the controversy, appellee brought this suit—not, however, against the Secretary, but against appellant. Appellee's prayer was for a declaration that § 4(c) of the China Trade Act[4] does not prohibit or restrict ownership by appellee of the shares above mentioned or prohibit or restrict ownership by any China Trade Act corporation of any corporate shares whatever. Answering, appellant prayed that appellee's prayer be denied and "that an appropriate declaratory judgment be rendered." No other re-

---

[1] Section 20 of the China Trade Act, 28 U.S.C.A. § 53, provides that, with inapplicable exceptions: "The Federal district courts shall have exclusive original jurisdiction of all suits * * * to which a China Trade Act corporation * * * is a party." Section 2(d) of the Act, 15 U.S.C.A. § 142(d), defines the term "Federal district court" as including the United States Court for China.

[2] Section 3 of the Act, 15 U.S.C.A. § 143, provides: "The Secretary is authorized to designate as China Trade Act registrar an officer of the Department of Commerce. The official station of the registrar shall be in China at a place to be designated by the Secretary. All functions vested in the registrar * * * shall be administered by him under the supervision of the Secretary; except that upon appeal to the Secretary, in such manner as he shall by regulation prescribe, any action of the registrar may be affirmed, modified, or set aside by the Secretary as he deems advisable."

[3] Section 4(c) of the China Trade Act, 15 U.S.C.A. § 144(c), provides: "A China Trade Act corporation shall not * * * engage in any form of insurance business; * * *."

[4] See footnote 3.

756

lief was sought by either party. Judgment was entered declaring that § 4(c) does not prohibit or restrict ownership by appellee of shares of stock of any corporation or corporations engaged in the insurance business. This appeal followed.

■ Power to grant declaratory judgments has not been expressly conferred on the United States Court for China. Such power has been conferred on "the courts of the United States."[5] Assuming, without deciding, that the United States Court for China is a court of the United States, it, like other courts of the United States, may grant declaratory judgments only in "cases of actual controversy."[6] A case of actual controversy is a case in which there is an actual controversy between the parties. The record in this case discloses no controversy between the parties (appellant and appellee). Hence this was not a case of actual controversy.

■ It is true that appellant (under the Secretary's supervision)[7] could have investigated appellee's affairs to ascertain if they were conducted contrary to § 4(c) of the Act and, if satisfied that they were so conducted, could have instituted proceedings for the revocation of appellee's articles of incorporation.[8] Appellant, however, did none of these things. That she could have done them is immaterial.

In 1933, after the controversy arose between appellee and the Secretary, appellant told appellee that, unless it conformed to the Secretary's interpretation of § 4(c)— the interpretation which gave rise to the controversy—she would institute proceedings for the revocation of its articles of incorporation. It is apparent, however, that, in making this threat (which she never carried out), appellant simply followed the Secretary's instructions. The interpretation referred to was the Secretary's, not appellant's interpretation; and the controversy which resulted therefrom was between appellee and the Secretary, not between appellee and appellant.

■ Congress, in empowering the courts of the United States to grant declaratory judgments in "cases of actual controversy,"[9] used the term "controversy" in its constitutional[10] sense. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000. "A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, supra.

■ In the case at bar, the only controversy disclosed by the record was a controversy between appellee and the Secretary of Commerce. With respect to that controversy, no judgment or "decree of a conclusive character"[11] could be granted, for the Secretary was not a party to the suit. Compare Angell v. Schram, 6 Cir., 109 F.2d 380; Redlands Foothill Groves v. Jacobs, D.C. Cal., 30 F.Supp. 995, 1009.

The inconclusiveness and utter futility of any declaratory judgment which could be granted in this case become apparent when it is recalled that, although appellant is an

---

[5] Section 274d of the Judicial Code, 28 U.S.C.A. § 400, provides: "In cases of actual controversy except with respect to Federal taxes the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

[6] See footnote 5.

[7] See footnote 2.

[8] Section 14 of the Act, 15 U.S.C.A. § 154, provides: "The registrar may, in order to ascertain if the affairs of a China Trade Act corporation are conducted contrary to any provision of this Act [chapter], * * * investigate the affairs of the corporation. The registrar, whenever he is satisfied that the affairs of any China Trade Act corporation are or have been so conducted, may institute in the United States Court for China proceedings for the revocation of the certificate of incorporation of the corporation. The court may revoke such certificate if it finds the affairs of such corporation have been so conducted."

[9] See footnote 5.

[10] Const. art. 3, § 2.

[11] Aetna Life Ins. Co. v. Haworth, supra.

officer of the Department of Commerce, she is not the head of the Department, but is a mere subordinate—in effect, a clerk—designated by the Secretary (the head of the Department) to perform certain duties under the Secretary's supervision, and is removable at the Secretary's pleasure. Thus, even though the judgment were not appealed from or, if appealed from, were affirmed, the Secretary, not being a party to the judgment, could disregard it and, by removing appellant and designating a new registrar, could render it wholly ineffectual.

It was stipulated by the parties[12] (appellant and appellee) that the Secretary consented that his controversy with appellee be "adjudicated" by the United States Court for China in a suit by appellee against appellant, and that this suit was instituted accordingly. The Secretary, however, was not a party to the stipulation and is not bound thereby. The stipulation is therefore disregarded.

Briefs of the parties state that joinder of the Secretary as a party defendant was waived. The record discloses no such waiver. Not being a party, the Secretary was not served with process, nor did he appear in the court below or in this court. He therefore cannot be said to have waived anything. Appellant's brief states that, "if the appeal be entertained the Government in this case hereby on behalf of both [appellant] and Secretary waives joinder of the Secretary." The statement, however, is not the Government's nor the Secretary's but is appellant's own statement. Neither the Government nor the Secretary is "in this case," nor is either bound by appellant's statement.

Judgment reversed and case remanded for dismissal.

DENMAN, Circuit Judge (dissenting).

I cannot agree with the majority opinion that there is no dispute or controversy between appellee and the registrar. Appellee was engaged in owning stock in insurance companies. The registrar was claiming that such activity is illegal and was threatening to bring proceedings to revoke appellee's certificate of incorporation, which she was authorized to do by the statute when she was satisfied that the law was being violated.[1]

Since the registrar was entitled to litigate this question against the appellee, and the Secretary of Commerce had made his administrative determination that she could do so by his consent to engage in litigation to determine her right so to do, if that be necessary, and since she was threatening so to do, it is my opinion that appellee was entitled to institute a suit against her to have a declaratory judgment as to her right so to proceed. Certainly the purposes and objectives of the declaratory judgment act would be served by procuring a declaratory judgment prior to such threatened action. However it is not necessary to determine this question because the registrar, though she moved to dismiss the complaint brought by the appellee, did not press her motion but answered and filed a counterclaim asking for the same declaratory relief.

A counterclaim results in shifting the parties so that the person counterclaiming becomes the plaintiff in the suit on the counterclaim and the original plaintiff becomes the defendant.[2] Thus, the counterclaim results in a suit by the registrar against appellee. It is my opinion that she was entitled so to act in any event, but particularly by the provision, cited in the footnote supra, requiring her to investigate the affairs of the appellee. There is no more appropriate

---

[12] The parties called their stipulation an agreed statement of facts.

[1] "§ 144. *Incorporation; articles; business prohibited; subscription to stock*

\* \* \* \* \* \*

"(d) \* \* \* If any such corporation transacts business in violation of this subdivision of this section \* \* \* *the registrar shall institute proceedings* under section 154 of this chapter for the revocation of the certificate. Sept. 19, 1922, c. 346, § 4, 42 Stat. 850; Feb. 26, 1925, c. 345, §§ 1-5, 43 Stat. 995; June 25, 1938, c. 696, § 1, 52 Stat. 1195." (Emphasis supplied).

"§ 154. *Investigations by registrar; revocation of certificate of incorporation*

"The registrar may, in order to ascer-

tain if the affairs of a China Trade Act corporation are conducted contrary to any provision of this chapter, or any other law, or any treaty of the United States, or the articles of incorporation or by-laws of the corporation, investigate the affairs of the corporation. *The registrar, whenever he is satisfied* that the affairs of any China Trade Act corporation are or have been so conducted, may institute in the United States Court for China proceedings for the revocation of the certificate of incorporation of the corporation. \* \* \*." (Emphasis supplied).

China Trade Act, 15 U.S.C.A. c. 4, § 141 et seq.

[2] Roberts Min. & Mill. Co. v. Schrader, 9 Cir., 95 F.2d 522.

758

method of investigating the affairs of appellee, which necessarily involve their legal character, than by a suit to have the law declared with reference thereto.

Regarding the counterclaim as a suit instituted by the registrar, it is apparent that the Secretary of Commerce is not a necessary party. As seen, the registrar is entitled to sue on her own determination of her right to sue. If preliminarily to this the Secretary must authorize her to sue, which in my opinion is not necessary, the authorization is pleaded.

It is true that counterclaims seeking the same declaratory relief as that of the complaint have been dismissed as redundant.[3] However, if the complaint itself states no cause of action it is a nullity and there is no redundancy in the counterclaim.

It is my opinion that the United States District Court for China should not be required to dismiss the action; that it properly proceeded to decide the merits of the case, and that the merits are before us on this appeal, which, I agree with the majority opinion, was properly taken.

Even were the Secretary regarded a necessary party, it appears from the brief of his agent, the registrar, that he regards himself as appearing by his agent's brief and as consenting to the continuance of the proceeding. I agree that this is an ineffective method of appearing, but believe justice would be served by advising the United States Assistant Attorneys General appearing as counsel for the registrar that they may appear here for the Secretary and make effective the important litigation brought to a final judgment after the trial below.

I quite agree that we should inquire strictly into the jurisdiction of this court as to the subject matter of any proceeding. Without it nothing may be adjudicated. Jurisdiction in personam is a different thing. Having jurisdiction of the subject matter, affected parties later may appear and make valid proceedings from which they have theretofore been absent. It is apparent from the statements of counsel of the respective parties that both are seeking the determination of the merits and that appellee's counsel would offer no objection to the Secretary joining in the litigation here to the end that its merits may be considered.

---

[3] Scruggs v. Casco Corp., D.C., 32 F. Supp. 625; Cheney Co. v. Cunningham, D.C., 29 F.Supp. 847; Cf. Dominion Electrical Mfg. Co. v. Edwin L. Wieg- and Co., 6 Cir., March 2, 1942, 126 F.2d 172; Leach v. Ross Heater & Mfg. Co., 2 Cir., 104 F.2d 88.