FRANK ELLIS ET AL v. WINTHROP ROCKEFELLER ET AL

4631                                             431 S.W. 2d 848

Opinion delivered September 3, 1968

[Rehearing denied October 21, 1968.]

54

*Wright, Lindsey* & *Jennings* for appellants.

*Joe Purcell,* Atty. Gen.; *Don Langston,* Asst. Atty. Gen. for appellees.

CONLEY BYRD, Justice. The question involved on this appeal is whether the State Board of Election Commissioners, in appointing the third member of each County Board of Election Commissioners, must appoint those persons selected by the majority party or whether the State Board of Election Commissioners has discretion in the appointment of the third member.

This action was commenced by appellants Frank Ellis, Franklin S. Garrison, T. O. Porter, Chester Andres, Maxine G. Reed, Marguerite Turner and James W. Hurley, to mandamus the State Board of Election Commissioners to appoint them as third members of their respective County Boards to fill existing vacan-

cies. The allegations are that each had been designated by the Republican County Central Committee of his respective county as the third member of the County Board of Election Commissioners; that the Republican Party is the majority party as defined in Initiated Act No. 3 of 1948; and that at a meeting of the State Board of Election Commissioners on August 1, 1967, they were nominated as the third members of their respective County Boards of Election Commissioners but the State Board of Election Commissioners failed and refused to appoint them.

Testimony proffered at the hearing shows that at the August 1, 1967 meeting of the State Board, called to fill vacancies, appellants were nominated as the third members of their respective County Boards, and persons alleged to be members of the minority party (Democrats) were also nominated. By vote of 6 to 2 along party lines with the Governor as chairman abstaining, the State Board refused to nominate appellants and by a vote of 6 to 2 appointed those persons alleged to be Democrats. However, because the majority and minority parties differed on the interpretation of the law as to which party was to control appointment of the third members, the appointments made by the State Board have not been certified by the Governor, the ex officio chairman, and the Secretary of State, the ex officio secretary of the Board.

The State Board and the County Boards of Election Commissioners were set up under Initiated Act 3 of 1948. So far as here pertinent, it provided:

"SECTION 1. For the purpose of this Act, the majority party shall be construed to be that political party polling, in the State of Arkansas, the greatest number of votes for Governor in the last preceding general election and the minority party shall be construed to be that political party polling, in the State of Arkansas, the second great-

est number of votes for Governor in the last preceding General Election.

"SECTION 2. The Governor, the Attorney General, the Secretary of State, the State Chairman of the State Central Committee of the majority party and the State Chairman of the State Central Committee of the minority party shall constitute the State Board of Election Commissioners. The Governor shall act as ex-officio Chairman of such Board and the Secretary of State shall act as ex-officio Secretary of such Board and shall keep the records of said Board.

"The County Chairman of the County Central Committee of the majority party and the County Chairman of the County Central Committee of the minority party shall be members of the County Board of Election Commissioners and together with one additional or third member to be appointed by the State Board of Election Commissioners, shall constitute the entire membership of the County Board of Election Commissioners for each of the several Counties in Arkansas. The third member of each County Board of Election Commissioners shall be appointed by the State Board of Election Commissioners at least ninety (90) days before any General Election for State, District or County office."

* * *

"SECTION 3. It shall be the duty of the County Boards of Election Commissioners not less than five (5) days preceding a general election to select and appoint three (3) judges and two (2) clerks for each voting precinct in their respective Counties and to perform the other duties prescribed, *provided however, that two (2) judges and one (1) clerk at each precinct shall be chosen and appointed by the two members of the County Board of Election Commissioners representing the majority party* and

one (1) judge and one (1) clerk at each precinct shall be chosen and appointed by the member of the County Board of Election Commissioners representing the minority party. The County Boards of Election Commissioners shall immediately upon performing such duties prepare, publish and post in a public place in the Sheriff's office and in the County Clerk's office of each County their respective list of appointees as judges and clerks of election.

"In the event the majority or minority representatives on such County Boards of Election Commissioners do not select and appoint their full quota of judges and clerks for each voting precinct then the County Boards of Election Commissioners by majority vote may fill such vacancies, provided, that in no event shall all of the judges or both of the clerks at any voting precinct be members of the same political party." (Emphasis supplied.)

The membership of the State Board of Election Commissioners was increased by the General Assembly, Acts 1951, No. 74, to nine members, by adding the Lieutenant Governor, the State Auditor, the State Treasurer, and the Commissioner of State Lands. Section 3 of Initiated Act No. 3 of 1948 was amended by the General Assembly, Acts 1963, No. 477, to read:

"It shall be the duty of the County Board of Election Commissioners, not less than five (5) days preceding a general election to select and appoint three (3) judges and two (2) clerks for each voting precinct in their respective Counties and to perform the other duties prescribed, *provided however, that two (2) judges and one (1) clerk in each precinct shall be chosen and appointed by two (2) members of the County Board of Election Commissioners representing the majority party* and one (1) judge and one (1) clerk at each precinct shall be chosen and appointed by the members of the County Board

of Election Commissioners representing the minority party. Provided further, that if there are no registered or known members of the minority party in any precinct or precincts within a county the minority party member of the County Board of Election Commissioners is hereby prohibited from naming any person to represent such minority party as a judge or clerk in any such precinct or precincts who is a member of the majority party, and in such event, the County Board of Election Commissioners shall by a majority vote name the judge and the clerk allotted the minority party for any such precinct or precincts. The County Board of Election Commissioners shall immediately upon performing such duties prepare, publish and post in a public place in the Sheriff's office and in the County Clerk's office of each County their respective list of appointees as judges and clerks of elections.

"In the event the majority or minority representatives on such County Boards of Election Commissioners do not select and appoint their full quota of judges and clerks for each voting precinct, as authorized hereinbefore then the County Board of Election Commissioners by majority vote may fill such vacancy, provided, that in no event shall all of the judges or both of the clerks at any voting precinct be members of the same political party unless there are no members of the minority party registered in said precinct." (Emphasis supplied.)

Our law holds that the writ of mandamus will not be granted to review the exercise of discretion of an officer or official board, but can be invoked only to compel the officer or board to exercise such discretion. *Better Way Life Ins. Co.* v. *Graves*, 210 Ark. 13, 194 S.W. 2d 10 (1946). To sustain their position here appellants point to section 3 of Initiated Act No. 3 of 1948 as amended, which provides that two judges and one clerk in each precinct shall be chosen and appointed by

*"two (2) members of the County Board of Election Commissioners representing the majority party and one (1) judge and one (1) clerk at each precinct shall be chosen and appointed by the members of the County Board of Election Commissioners representing the minority party."* Based upon this language, appellants contend that the third member must be a member of the political party designated as the majority party by section 1 of the Initiated Act and that, since the statute declares him to be a representative of the majority party, it is the prerogative of the majority party to make this selection with the State Election Board being only a rubber stamp. An alternative argument made by appellants is that, since they were the only Republicans nominated at the August 1 meeting, the State Election Board had no discretion to exercise, it being bound by the statute to appoint a member of the majority party as a representative thereof. On the other hand, the State Board contends that it may choose anybody, irrespective of political party affiliation, to serve as the third member.

Appellants can find no solace in that portion of section 2 of the Initiated Act which provides that the third member is *"to be appointed* by the State Board of Election Commissioners." The law generally is that the choice of a person to fill an office is the essence of an appointment and that the selection must be the discretionary act of the officer or board clothed with the power to do the appointing. *People* v. *Mosher,* 163 N.Y. 32, 57 N.E. 88 (1900). Furthermore, appellants' "rubber stamp" argument is illogical. We find it difficult to believe that the legislature would increase the membership of the State Election Board from five to nine members if it was intended to function merely as a rubber stamp.

Appellants place much reliance upon the fact that section 3 of the initiated measure, both as originally written and as amended by the 1963 act, refers to "two commissioners representing the majority party." Had

the statute stopped with the term "representatives" of the majority or minority party, appellants' argument would have more merit; but the same statute, in dealing with election judges and clerks, specifically provides " .. that in no event shall all of the judges or both of the clerks at any voting precinct be *members of the same political party."* (Emphasis supplied.) Since the state, when referring to County Election Commissioners, consistently uses the term "representing" or "representative," but when referring to judges and clerks uses the term "members of the same political party," logic dictates that a distinction was intended.

It has been argued that the political history of our state, having predominantly a one-part system at the time of the drafting of the statute, was such that the drafters did not foresee this problem and that the use of the phraseology was an oversight. With this we do not agree, for the Initiated Act itself was dealing with two parties, and the complement of the State Board of Election Commissioners as originally set up would obviously permit the Governor and the chairman of his political party to comprise a minority of the members of the State Election Board. Obviously the two-party system had become a reality at the time section 3 was amended by the 1963 act. By that time our compulsory primary law, Acts 1957 No. 205, which grew out of the two-party system, had been in operation during two elections.

It has been suggested that the term "representing the majority party" becomes meaningless unless it is interpreted as meaning *member of the majority party.* With this we do not agree. The term "representing the majority party" is apparently used in its common acceptation—i.e., to act on behalf of and to work with the majority party in the selection of the election judges and clerks.

Therefore we hold that section 3 of Initiated Act No. 3 of 1948 as amended by the 1963 act does not re-

quire the third member of the County Board of Election Commissioners to be either a member of the majority political party or a designee of that party. The statute only charges the third member as being a representative of the majority party.

It follows that the trial court properly dismissed appellants' mandamus action. However, we fail to see that a different result would have been reached had appellants followed some other remedy.

Affirmed.

BROWN, J. concurs.

HARRIS, C.J., dissents in part.

WARD, J., dissents.

LYLE BROWN, Justice (concurring). I agree with the majority's conclusion; however, that opinion fails to mention a particular point of importance. The fact that the State Board is not required to select the third member from the loyalists of the majority party may initially arouse concern. The answer to that anxiety is that if the State Board abuses its discretion, or if a given appointee fails in his responsibility to act on behalf of the majority party, the courts are empowered to afford relief.

CARLETON HARRIS, Chief Justice. I agree with the majority that appellants pursued the wrong remedy, and that mandamus would not lie in this case; however, the court has passed on the contentions, which I consider entirely appropriate, due to the time element involved.

I also agree with the majority that these appellants are not entitled to any relief, and that the State Board of Election Commissioners is not required to "rubber

stamp" the names offered by the majority party. In other words, it is my view that the board is entitled to exercise its discretion in making the appointments — but I am also of the opinion that this discretion is limited.

It is true that the omission of the word, "the," and changing of the word, "member," to "members," in the 1963 amendment of Section 3 of Initiated Act No. 3 leave the statute somewhat confusing, and make an interpretation more difficult, but I am unable to reach the final conclusion found by the majority.

The word, "representative," is defined, *inter alia,* by Webster's Dictionary (Third New International) as "one that represents another or others in a special capacity; one that represents another as agent, deputy, substitute, or delegate, usually being invested with the authority of the principal." This is the sense in which the word is used in everyday language; it is simply contemplated that one who represents another is in accord and harmony with the one that he represents.

I cannot believe that it was the intention of the Legislature to permit the majority party to be represented by one whose beliefs and interests are contrary to the group represented, so, while I do not think that the board is required to appoint particular persons (appellants herein) as the third members of the several County Boards of Election Commissioners, I do think that the board is required to name persons who are supporters of the majority party.

I therefore respectfully dissent to this portion of the opinion.

PAUL WARD, Justice. I disagree with the majority, both (a) as to the interpretation of the statutes involved, and (b) as to the propriety of the remedy of mandamus.

(a) Briefly, my interpretation of the statutes is that the legislature clearly intended for the majority party, in general elections, to have a majority of the election officials at the ballot box. Any other interpretation would make the statutes meaningless. Certainly my interpretation has been zealously followed over the years up to the present time - - until the shoe got on the other foot.

(b) I agree with the majority that this court cannot control the discretion of a trial court. This means that when a trial court has a choice between two courses of action we cannot tell it which course to follow.

In the case here under consideration the State Board of Election Commissioners was directed by statute to appoint a "third member" of each County Board. If the party in power had nominated more than one person as the "third member" then the State Board would have had a right to exercise its discretion and choose any one of the nominees. That, however, is not the situation here since only *one* nominee was named. Therefore the State Board had only one "choice" with no discretion and mandamus is a proper remedy.