WINTHROP ROCKEFELLER ET AL v. JOE PURCELL ET AL

4834                                                    434 S.W. 2d 65

Opinion Delivered October 30, 1968
[Rehearing denied December 9, 1968.]

*Wright, Lindsey & Jennings* (By *Robert D. Cabe*) for appellants.

*John D. Thweatt* and *Jerry J. Screeton* and *James M. Thweatt & Hubert E. Graves* for appellee (*Farris*).

*Felver A. Rowell* for appellee.

PER CURIAM. This case is a sequel to *Ellis* v. *Rockefeller*, 245 Ark. 53 (Sept. 3, 1968). We treat the petition herein as one for declaratory judgment. At the trial level, petitioners (appellants) produced evidence tending to show that the State Board of Election Commissioners appointed to the County Boards of Election Commissioners in Prairie, Faulkner, and Conway Counties, men who have lately been active and loyal Democrats on the county level. At the close of petitioners' evidence the respondents moved for, and were granted, a dismissal on the ground that the evidence did not show that the appointees could not be representative of the majority (Republican) party. The motion was granted and petitioners appealed.

If the appointees are presently loyal Democrats on the county level, then their appointment to the County Board of Election Commissioners as the third member would not comport with the expressed spirit of our holding in *Ellis* v. *Rockefeller*. There we stated in effect that, although the appointed member need not be a Republican, he should be one that would represent that party in the selection of judges and clerks, a person who would act on behalf of, and work with, the majority (Republican) party in selecting election officials.

Petitioners having made a prima facie case of ineligibility of the appointees, the trial court should have denied respondents' motion to dismiss and proceeded to take proof to ascertain whether the appointees are still loyal members of the Democrat Party on the county level.

Reversed and remanded.

HARRIS, J., concurs.

FOGLEMAN and BYRD, JJ., dissent; Justice FOGLEMAN's written dissent to be filed later.

CARLETON HARRIS, Chief Justice. I am still of the view set out in my dissent in *Ellis, et al* v. *Rockefeller, et al*, 245 Ark. 53, *i.e.*, that the third member of the several county boards of election commissioners should be one who is *supporting* the majority party, whatever his party status. Since the evidence in Case No. 5-4834 clearly indicates that the third party members named are not supporters of the majority party, I agree that this case should be reversed.

As far as Case No. 5-4835 is concerned, having already expressed myself to the effect that the majority party was entitled to two representatives on the county election boards (the county Republican chairman and the third member, a supporter), this enabling them to choose two judges and one clerk in each voting precinct, it necessarily follows that I would certainly agree that the Republican members of the various county boards of election commissioners are entitled, under the circumstances mentioned in the majority opinion, to name one judge and clerk.

I therefore concur.

JOHN A. FOGLEMAN, Justice. Generally I agree with the views stated by Mr. Justice Byrd in his dissenting opinion, but I feel that there are other compelling reasons why action of the trial court should be affirmed.

The pleadings in this case indicate that the petitioners and appellants are three members of the State Board of Election Commissioners who brought the action in that capacity and as a class on behalf of the Republican party in Arkansas and three persons who claim title to the office of election commissioner in three counties in the state. The petition filed in the lower court was for mandamus against the remaining six members of the State Board of Election Commissioners and the three persons who hold office as election commissioners by appointment of the State Board in the three counties

in question. The allegations of the petition clearly state that the individual election commissioners in these counties were named by a majority of the State Board of Election Commissioners over the objection of the petitioning members, who proposed the individuals who are among the petitioners and appellants. It is further alleged that the Chairman of the State Board ruled that the person nominated was not qualified to serve and that the person nominated by the petitioning minority of the State Board of Election Commissioners had been elected. This ruling by the Chairman was appealed and overruled by a majority of the full board. The allegations of the petition with respect to the particular respondent county election commissioners have to do with their previous activities indicating membership in, or support of, the Democratic party as a basis for the contention that they could not in any circumstances represent the Republican party in the State of Arkansas or in their respective counties. The allegation is made that the action of the State Board of Election Commissioners by its majority is void. It is further alleged that the *only persons* qualified to serve as third members of these respective County Boards of Election Commissioners are the petitioners nominated by the minority of the election commission.

The writ sought would command the Secretary of the State Board of Election Commissioners to notify the petitioners nominated by the minority of the commission of their election to the office of third member of the Board of Election Commissioners in their respective counties and to receive and file their oaths of office and do all further things necessary to insure that they be permitted to serve as third members of their respective boards of election commissioners.

It was clearly held, and properly so, in *Ellis* v. *Rockefeller*, 245 Ark. 53, 431 S.W. 2d 848, that the exercise of discretion in appointing the third member of each county board of election commissioners could not

be controlled by mandamus. Inapplicability of mandamus to control discretionary acts of boards and commissions is not a recent development, but is a general rule of law and has been stated and applied in many cases. See, e.g., *State* v. *Marianna,* 183 Ark. 927, 39 S.W. 2d 301; *Refunding Board of Ark.* v. *National Refining Co.,* 191 Ark. 1080, 89 S.W. 2d 917; *Better-Way Life Ins. Co.* v. *Graves,* 210 Ark. 13, 194 S.W. 2d 10; *Garland Power & Development Co.* v. *State Board of Railroad Incorporation,* 94 Ark. 422, 127 S.W. 454; *Miller* v. *Tatum,* 170 Ark. 152, 279 S.W. 1002. Mandamus will not lie to correct an erroneous decision already made. *Dotson* v. *Ritchie,* 211 Ark. 789, 202 S.W. 2d 603; *Jackson* v. *Collins,* 193 Ark. 737, 102 S.W. 2d 548.

This court has spoken positively on the proposition of controlling the discretion of a state board in language that cannot be misunderstood. For instance, in *Refunding Board of Arkansas* v. *National Refining Co.,* 191 Ark. 1080, 89 S.W. 2d 917, this court said:

"The board is required, in the discharge of its duties, not only to weigh and determine facts, but to expound the various provisions of the law under which it operates, and the board's judgment in these respects is not subject to control by mandamus or injunction. *Riverside Oil Co.* v. *Hitchcock,* 190 U.S. 316, 23 S. Ct. 698, 47 L. Ed. 1074; *Ness* v. *Fisher,* 223 U.S. 683, 32 S. Ct. 356, 56 L. Ed. 610; *Bates & Guild Co.* v. *Payne,* 194 U.S. 106, 24 S. Ct. 595, 48 L. Ed. 894."

The extent to which review of an erroneous decision within the discretion of a board is denied is illustrated in *Democrat Printing & Lithographing Co.* v. *Parker,* 192 Ark. 989, 96 S.W. 2d 16, in the following language:

"* * * Discretion as used in respect to executive state officials means not only discretion on

questions of fact, but on mixed questions of law and fact. Whether such official decides the question right or wrong is immaterial. Having the power to decide at all carries with it the duty to decide as he perceives the law and the facts to be, and the courts have no power to review his determination by mandamus. We have heretofore, in effect, so decided. See *Pitcock* v. *State*, 91 Ark. 527, 121 S.W. 742, 134 Am. St. Rep. 88. The conclusion reached in the *Pitcock* case, *supra*, finds support in *Riverside Oil Co.* v. *Hitchcock*, 190 U.S. 316, 23 S. Ct. 698, 47 L. Ed. 1074. See, also, *Branaman* v. *Harris* (C.C.) 189 F. 461.''

In order to command the Secretary of the State Board of Election Commissioners to perform the acts petitioners seek to require would certainly require a review of the discretionary acts of the State Board of Election Commissioners and the denial of this relief by the circuit judge, on motion, was certainly proper and appropriate.

Petitioners also seek declaratory relief under Ark. Stat. Ann. § 34-2501 (Repl. 1962). A more obvious attempt to obtain an advisory opinion from the courts by this action could hardly be imagined. It is not the purpose of declaratory judgment acts to authorize the rendition of advisory opinions. This court has clearly stated that in order to be entitled to declaratory relief, one must have a legally protectable interest in the controversy and that the issue involved must be ripe for judicial determination. *Andres* v. *First Ark. Development Finance Corp.*, 230 Ark. 594, 324 S.W. 2d 97.

The declaratory judgment act does not create any cause of action. It has also been held that it is intended to supplement rather than supersede ordinary causes of action. *City of Cabot* v. *Morgan*, 228 Ark. 1084, 312 S.W. 2d 333. The act does not attempt to enlarge or alter the jurisdiction of any court. *Jackson* v. *Smith*,

236 Ark. 419, 366 S.W. 2d 278; *Catlett* v. *Republican Party,* 242 Ark. 283, 413 S.W. 2d 651. Furthermore, a "justiciable controversy" must be a controversy as to a subject matter over which the court has jurisdiction. See *Cowan* v. *Cowan,* 254 S.W. 2d 862 (Tex. 1952).

The declaratory judgment act is merely procedural. *Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227, 57 S. Ct. 461, 81 L. Ed. 617; *Skelly Oil Co.* v. *Phillips,* 339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194. No court takes jurisdiction under this act, the subject matter of which it would not have jurisdiction of in a remedial action. The act merely enables the court to take jurisdiction at a point earlier in time than it would do under ordinary remedial rules and procedures. See *In Re State,* 264 N.W. 633 (Wis. 1936).

The declaratory relief sought in this action is a finding that the three respondent election commissioners are ineligible for lack of the qualifications to hold the position of third member of their respective county boards, and that the three petitioning nominees be declared to have been elected. The basis of the alleged ineligibility is their alleged inability to represent the Republican party.

The position of county election commissioner is a public office. *Warren* v. *McRae,* 165 Ark. 436, 264 S.W. 940. Neither of the petitioners has any legally protectable interest in the office which gives them the right to declaratory relief. In order to have been entitled to declaratory relief, it would be necessary that one of the petitioners have a legal right to the office in question. It is absurd to say that persons nominated for the office, but not elected by the State Board of Election Commissioners, have any legal protectable interest in the office. The contention that the nominees of a political party had to be accepted by the State Board of Election Commissioners as elected was specifically rejected in *Ellis* v. *Rockefeller,* 245 Ark. 53, 431 S.W.

2d 848. One who received the second largest number of votes does not become entitled to an office when it is shown that the winner was ineligible. *Clark* v. *Porter*, 223 Ark. 682, 268 S.W. 2d 383.

The only ones having right to question the title of members of a county board of election commissioners are the prosecuting attorney and the party entitled thereto. Ark. Stat. Ann. §§ 34-2201—04 (Repl. 1962). Even in the absence of statute, the prosecuting attorney can bring proceedings to oust ineligible persons from office. *State* v. *Jones*, 194 Ark. 445, 108 S.W. 2d 901. This court has clearly held that any such action may be brought either by the prosecuting attorney or the person entitled to the office. *State* v. *Sams*, 81 Ark. 39, 98 S.W. 955; *State* v. *Jones, supra; Barnett* v. *McCray*, 169 Ark. 833, 277 S.W. 45.

For the purposes of this proceeding, the county election commissioners are certainly county officers. *Smith* v. *State*, 211 Ark. 112, 199 S.W. 2d 578.

In such a proceeding, it is clear that before one can question the title to an office, he has the burden of proving that he himself is entitled thereto. *Jones* v. *Duckett*, 234 Ark. 990, 356 S.W. 2d 5.

An action to contest a person's eligibility to hold an office is properly brought under Ark. Stat. Ann. §§ 34-2201—04. *Jessup* v. *Hancock*, 238 Ark. 866, 385 S.W. 2d 24.

Courts should refuse to render a declaratory judgment when it will be only advisory in character or fruitless or the judgment would not afford specific relief to a litigant. *Cook* v. *Sikes*, 210 Ga. 722, 82 S.E. 2d 641 (1954). The parties seeking to maintain the action must have the capacity to sue and a right which is justiciable. *Cook* v. *Sikes, supra.*

The declaratory judgment act has been held to confer no right on litigants, taxpayers, citizens or voters of a party to bring a suit to contest the qualifications of a person to hold office. *Friley* v. *Becker,* 300 Ky. 749, 190 S. W. 2d 355 (1945). An unsuccessful nominee for public office, claiming that he was unopposed because his successful opponent was illegally nominated, cannot be issued a certificate of election, therefore he is not entitled to relief under the declaratory judgment act because he has no legal protectable interest at stake and the judgment would not constitute specific relief to either party. *State* v. *Thatch,* 359 Mo. 122, 221 S.W. 2d 172 (1949). A defeated candidate does not have a justiciable interest sufficient to maintain a judgment declaring the successful candidate ineligible for office. *Kamas* v. *Stepan,* 197 S.W. 2d 193 (Tex. Civ. App. 1946).

A determination of the question of title to public office in an action for declaratory judgment is binding only on the parties to that action and no one else. *Kilroy* v. *Connor,* 324 Mass. 238, 85 N.E. 2d 441 (1949); *Manlove* v. *Johnson,* 198 Wash. 280, 88 P. 2d 397 (1939). A declaratory judgment that one elected to office is ineligible will not terminate the controversy. *Bloome* v. *Juergensmeyer,* 344 Ill. App. 625, 101 N.E. 2d 851 (1951).

It has even been held that the members of a board have no standing in a declaratory judgment proceeding, either as citizens and taxpayers or in their official capacity, to question the validity of the appointment of another member who has assumed office. *Marshall* v. *Hill,* 47 Del. 478, 93 Atl. 2d 524 (1952). See, also, *Manlove* v. *Johnson, supra.*

Let us suppose, for instance, the Pulaski Circuit Court ultimately finds that the members of the respective county boards, whose eligibility is questioned, are not qualified to hold the office. What will the court do about it? It cannot, at the suit of petitioners, oust the present holders of the office and a declaratory judgment

would not be binding upon those who are not parties to this action, or in a proper action, to oust them.

Clearly, the circuit judge properly dismissed the declaratory judgment proceeding because no petitioner had a legally protectable interest to give him standing to seek the relief.

There is a further reason why the trial court's action was proper. In order for this action to have been an appropriate one for declaratory judgment, the controversy must have been of a character presenting a real and substantial controversy admitting *of specific relief through a decree of a conclusive character directing, and not suggesting, what the parties may or may not do*. *Smith* v. *American Asiatic Underwriters, Federal, Inc.*, 127 F. 2d 754, adhered to, 134 F. 2d 233 (9th Cir. 1942); *State* v. *Thatch*, 359 Mo. 122, 221 S.W. 2d 172 (1949); *Chas. L. Harney, Inc.* v. *Contractors' State License Board*, 238 P. 2d 637 (Cal. App. 1951). The Pulaski Circuit Court cannot enter any such judgment.

I cannot help but believe that the result in this case is due to the inordinate speed with which this case was submitted, briefed, argued and decided. It was first filed on Friday, 16 days after the date of the circuit court judgment. The briefs were sketchy and not of the standard that would ordinarily be expected from the able counsel representing the respective parties. Oral argument was had on Monday afternoon, after the members of the court had had no more than two hours for reading the briefs of appellees. These briefs had to be prepared by the respective attorneys for appellees between the time they reached their offices after the hearing of a motion to advance in this court on Friday afternoon and 10 a.m. Monday. In oral argument, each side was allowed only 30 minutes. Since the parties were from different counties and represented different litigants, the time was scarcely adequate for informative argument. I cannot help but believe that the result

would have been materially different if the cause could have been adequately briefed, fully argued and more deliberately considered. It was conceded by appellants' counsel in oral argument that the decision of this case could not possibly affect the conduct of the coming general election in any of the three counties involved unless this court declared that the nominees receiving the smaller number of votes in the State Board of Election Commissioners were declared to have been entitled to the office. He frankly admitted that he had no authority whatever for any such action by this court. I dare say there is none. There is no such implication in the majority's per curiam opinion. Consequently, even if the Pulaski Circuit Court moves with all possible dispatch, and, even if the Pulaski Circuit Court's judgment can have the effect of ousting the present incumbents, it would be impossible for the State Board of Election Commissioners to meet, name successors and have them commissioned and qualified in time to act in matters pertaining to this election. It is even possible, under such circumstances, that a stalemate would result in the three boards of election commissioners involved. Thus, no really useful purpose has been served by the haste in the handling and decision of this appeal.

I would affirm the judgment of the circuit court.

CONLEY BYRD, Justice. I dissent to the majority opinion and for reasons state:

(1) Initiated Act No. 3, 1948, for the purpose of the Act, describes the party receiving the greatest number of votes for governor as the majority party and the party receiving the second highest vote for governor as the minority party.

(2) Section 2 of the Initiated Act as amended provides for a State Board of Election Commissioners to be comprised of the Governor, Lieutenant Governor, Attorney General, Secretary of State, State Auditor, State

Treasurer, Commissioner of State Lands, the State Chairman of the majority party and the State Chairman of the minority party. It also provides that the County Chairman of the majority party and the County Chairman of the minority party shall be each an ex officio member of the County Election Board. It then provides that the State Board of Election Commissioners shall appoint a third member of the County Board of Election Commissioners and that this third member, together with the two County Chairmen, shall constitute the entire membership of the County Board of Election Commissioners for each of the several counties in Arkansas.

(3) Section 4 (Ark. Stat. Ann. § 3-609 [Supp. 1967]), as to qualifications of the Commissioners, provides:

"The qualifications of all persons on the State Board of Election Commissioners, County Board of Election Commissioners, precinct judges and clerks shall be the same, to wit:

"They shall be qualified electors of the State, County and precinct in which they reside or in which they keep their political residence. They shall be discreet persons, able to read and write the English language and shall not have been convicted of any infamous crime and no member of a County Board of Election Commissioners shall be a candidate for any office to be filled at any general election while serving on said County Board."

(4) Section 3 of the Initiated Act of 1948 as amended (Ark. Stat. Ann. § 3-608 [Supp. 1967]), then sets forth the duties of the County Board of Election Commissioners as follows:

"It shall be the duty of the County Board of Election Commissioners, not less than five (5) days

preceding a general election to select and appoint three (3) judges and two (2) clerks for each voting precinct in their respective Counties and to perform the other duties prescribed, provided however, that two (2) judges and one (1) clerk in each precinct shall be chosen and appointed by two (2) members of the County Board of Election Commissioners representing the majority party and one (1) judge and one (1) clerk at each precinct shall be chosen and appointed by the members of the County Board of Election Commissioners representing the minority party. Provided further, that if there are no registered or known members of the minority party in any precinct or precincts within a county the minority party member of the County Board of Election Commissioners is hereby prohibited from naming any person to represent such minority party as a judge or clerk in any such precinct or precincts who is a member of the majority party, and in such event, the County Board of Election Commissioners shall by a majority vote name the judge and the clerk allotted the minority party for any such precinct or precincts. The County Board of Election Commissioners shall immediately upon performing such duties prepare, publish and post in a public place in the Sheriff's office and in the County Clerk's office of each County their respective list of appointees as judges and clerks of elections.

"In the event the majority or minority representatives on such County Boards of Election Commissioners do not select and appoint their full quota of judges and clerks for each voting precinct, as authorized hereinbefore then the County Board of Election Commissioners by majority vote may fill such vacancy, provided, that in no event shall all of the judges or both of the clerks at any voting precinct be members of the same political party un-

less there are no members of the minority party registered in said precinct."

(5) Section 5 of the Initiated Act (Ark. Stat. Ann. § 3-610 [Repl. 1956]), leaves the selection of the County Chairmen to the parties, i.e., the County Chairmen may be selected by the township committeemen of the respective parties or appointed by the State Commission outright or through an appeal by a contestant.

(6) At a hurried oral argument, on short notice and with scant briefs, counsel for the appellants stated that he was applying for a writ of mandamus against the State Election Board with respect to the third member of the Election Commission of Prairie, Faulkner and Conway counties. He conceded that the persons selected complied with the qualifications set forth in Section 4 of the Initiated Act, *supra,* and that no testimony was introduced in the trial court that the persons selected could not work with the Republican Chairman. In asking that we reverse and remand the case to the State Board of Election Commissioners, with directions to name the three persons nominated by the State Chairman of the majority party to serve as the third members of the County Election Boards, counsel conceded that he had no law to support such action, but suggested that this court should invent such law.

In *Ellis* v. *Rockefeller,* 245 Ark. 53 (September 3, 1968), we held that the appointment of the third member was within the discretion of the State Election Board and that such member was not required to be a member of the majority party nor a nominee of that party. This, for the obvious reason that if the state arm of the majority party can appoint the County Chairmen and also the third member, there is no practical reason for having a third member.

As I view the action of the majority, they are either ignoring the record before us or in effect modifying

*Ellis* v. *Rockefeller* without saying so. The third member of the County Board of Election Commissioners is either to be an active member or else there is little reason to take the trouble to have the State Constitutional Officers and the two party Chairmen to meet together for the purpose of appointing him. The statute did not contemplate such a useless gesture.

The Initiated Act clearly places the appointment of the third member with the State Election Board. I cannot envision a group of individuals better qualified than our Constitutional Officers and the Chairmen of the Republican and Democratic parties to select a third member of the County Election Commission for the purposes of insuring fair elections in this state.

The constitution does not give to this court jurisdiction to legislate qualifications for the position of the third member of the Election Commission in addition to those prescribed in the Initiated Act, nor does the Initiated Act permit this court a second guess as to who should serve as such member.

For these reasons, I respectfully dissent.