WINTHROP ROCKEFELLER ET AL v. JOE PURCELL ET AL

5-4835                                             434 S.W. 2d 72

Opinion Delivered October 30, 1968

*Wright, Lindsey & Jennings* (By *Ronald A. May*) for appellants.

*Joe Purcell*, Atty. Gen.; *Don Langston*, Asst. Atty. Gen.; *Henry Ginger*, Asst. Atty. Gen. for appellees.

*Jerry J. Screeton* and *James M. Thweatt & Hubert E. Graves* for appellee—Intervenor *John D. Thweatt*.

PER CURIAM. This is in the main an action for a declaratory judgment brought by three members of the State Board of Election Commissioners and sixteen citizens, all as representatives of the Republican Party. The defendants are the other members of the State Board of Election Commissioners and sixteen citizens who were named as the third member of the county board of election commissioners in sixteen counties, who are also joined as representatives of the Democratic Party. The complaint as amended asks for a declaratory judgment construing the statutes governing the selection of election judges and clerks. This appeal is from an order of the circuit court finding that the appellants are not entitled to declaratory relief and dismissing their complaint.

At the outset we hold that there is an actual and substantial controversy that should be decided and that falls within our declaratory judgment procedure. Moreover, in election cases we have repeatedly announced decisions in cases that had actually become moot, for the sound reason that controversies about the election laws present issues of public interest that ought to be set at rest. *Pirtle* v. *Dalmasso,* 240 Ark. 1063, 403 S.W. 2d 740 (1966), and cases there cited.

Under the statutes the county election commission is composed of a representative of the majority party, a representative of the minority party, and a third member chosen by the State Board of Election Commissioners. Initiated Act 3 of 1948, as amended. The majority party is defined as that party receiving the largest number of votes for the office of Governor in the last general election (ibid.) and is therefore now the Republican Party. Under the statutes it is the duty of the State Board to select as the third member of the county boards persons who will "represent" the majority

party, or as we said in *Ellis* v. *Rockefeller*, 245 Ark. 53, who will "act on behalf of and . . . work with the majority party in the selection of the election judges and clerks."

Under the statute the two majority members of the county election commissioners are to select two election judges and one clerk for each polling place, with the minority member selecting one judge and one clerk. Ark. Stat. Ann. § 3-608 (Repl. 1956). It was unquestionably the intention of the lawmakers that the minority party would always be entitled as a matter of right to one judge and one clerk at each polling place.

The petitioners assert that the statutes have been construed to mean, and will be so administered with reference to the coming general election, that the minority party (now the Democratic Party) is entitled to select one judge and one clerk for each precinct and that a majority of the commission may then select the other two judges and one clerk. Hence, if the third member of the commission should see fit to join with the minority party member rather than with the majority party member, the result would be that the minority party would select all the judges and clerks, leaving the majority party with no representation whatever at the polls. That result would leave the majority party in a worse position than it occupied when it was the minority party, for then it was entitled to select one judge and one clerk for each precinct as a matter of right.

We cannot approve that construction of the statute. In our view the legislature contemplated that the majority member of each county commission and the third member selected by the State Board to represent the majority party would ordinarily agree upon the selection of two judges and one clerk for each polling place. In that respect the third member has a duty of good faith. If the third member and the majority-party member (now the Republican member) are unable to agree upon

anyone to serve as judges and clerks selected by the majority party, then it is thereby demonstrated that the third member is not qualified to "represent" the majority party as we used that term in *Ellis* v. *Rockefeller, supra.* The Republican member of the commission then becomes, in fact, the minority member of the commission and as such we hold that he is entitled to select one judge and one clerk for each precinct. This per curiam order so declares the law.

Reversed.

HARRIS, C.J., concurs.

FOGLEMAN and BYRD, JJ., dissent. Justice FOGLEMAN's written dissent to be filed later.

JOHN A. FOGLEMAN, Justice. It is to be regretted that our system has been unable to devise a method to insure fair elections and eliminate the constant struggle for control of election processes. Until we devise that system, we must depend on the machinery which has been devised legislatively, through initiative and General Assembly action. The courts are not empowered to provide election machinery or eliminate what may seem to them to be defects in the machinery provided by the agency government most representative of the people, the ultimate sovereign, in whom the power is properly vested. I have supreme confidence in the judicial department of government in its own area and in its competency to deal with judicial questions. I have no confidence in its ability to deal with legislative problems as competently as the proper branch. Certainly, the courts cannot be expected to do a better job in that field than either the General Assembly or the people of the state.

I agree estentially with the dissenting opinion of Mr. Justice Byrd. I cannot help expressing my feeling that the court has acted legislatively. One reading the act in question, would be hard put to find the lang-

uage stating that the county chairman of each party (the majority and minority, as defined in the act) was entitled to name one judge and one clerk of election in each precinct. The act was drawn to protect the minority party, not the majority.

There is no need to elaborate on the pleadings in this appeal. Actually, No. 5-4834, *Rockefeller* v. *Purcell*, 245 Ark. 522, 434 S.W. 2d 65, and this appeal were from two different judgments in the same case. The judgment from which this appeal is taken denied that part of appellants' petition praying a declaratory judgment that, in event of disagreement between any third member of any county board of election commissioners and any chairman of the Republican Central Committee ''in that county'' in the naming of judges and clerks, the Chairman of the Republican Committee should be permitted to name *two judges and one clerk* in each precinct without ''interference'' from the third member or the Chairman of the Democratic Committee. It is alleged and admitted that the Attorney General of Arkansas has rendered an opinion that in the event of disagreement between the Republican chairman and the third member of a county board, then the disagreement would be resolved by appointment of these judges and this clerk by vote of a majority of the board. I do not see how the statute can be read otherwise. The portion of the Attorney General's opinion overlooked by the majority in its per curiam opinion states that the act clearly requires that in such event, the majority of the county board must name a member of the majority party to fill the vacancy or vacancies. Under his construction, there would be two Republican judges and one Republican clerk in each precinct. It is difficult for me to see how the majority party is thereby discriminated against.

Actually, this is an appeal from the opinion of the Attorney General in the guise of an action for a declaratory judgment. There is not even a remote suggestion of a justiciable controversy.

The declaratory judgment procedure "does not license litigants to fish in judicial ponds for legal advice." *Lide* v. *Mears,* 231 N.C. 111, 56 S.E. 2d 404 (1949). What I have had to say about the applicability and availability of declaratory judgment procedure in *Rockefeller* v. *Purcell,* No. 5-4834, 245 Ark. 522, 434 S.W. 2d 65, is also relevant here, for the most part. This is an even more obvious application for an advisory opinion than was involved in that case, however.

I submit that there is no party petitioner who has a "legally protectable interest." I further submit that there is no justiciable controversy in the sense of ripeness for judicial determination. How could the trial court have written a judgment granting specific relief of a conclusive nature to *any* of the appellants directing what the *parties* may or may not do?

This leads to another important defect in the proceedings which justified the action of the circuit judge in denying a declaratory judgment. The defect of parties appears on both sides of the jurisdictional fence. Not a single petitioner is a member of a county board of election commissioners, nor do any of them show a legal right to act as such. Equally as fatal to the action here is the fact that not a single election commissioner by virtue of his position as Chairman of the Democratic party of his county is a party to the action in any capacity. The rights and duties of these 75 officials are as much involved in this proceeding as those of the other two county members. Not only is there that defect, but the position of appellant petitioners for declaratory relief meets itself coming back when they seek this relief. They ask that the *only* members of any county election commission made parties to the proceedings be declared ineligible. If declared ineligible as a result of this court's decision in No. 5-4834, then not only will there be *no* county board of election commissioners before the court, there might not be a single member of any county board.

The action of the trial court was justified because the defect of parties was jurisdictional and required dismissal of the petition.

The requirements of the declaratory judgment act are clear. The pertinent part reads:

"When the declaratory relief is sougnt, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." [Ark. Stat. Ann. § 34-2510 (Repl. 1962)].

While we have no decisions in this state particularly in point, authorities from other jurisdictions having adopted this act are either controlling or highly persuasive. They differ in effect only slightly. By the great weight of authority, the defect of parties is fatal to the action.

I have already demonstrated the basis of my belief that none of the appellants-petitioners had any "legally protectable interest" in my dissenting opinion in *Rockefeller* v. *Purcell,* No. 5-4834 (November 1, 1968). I also set out there authorities supporting my positions that (1) those not parties to the action are not bound and that their rights are not concluded[1] and (2) that a petition for declaratory relief should not be granted unless the court could grant *specific* relief through a judgment of *conclusive* character *directing,* not suggesting what the *parties* may or may not do. There remains for treatment the defect of parties defendant (or respondent).

Before declaratory relief is granted, all interested parties should be before the court. *School Dist. No.* 1 v. *School Dist. of Lansing,* 331 Mich. 523, 50 N.W. 2d

[1]See, also, **People** v. **Baker,** 133 Colo. 398, 297 P. 2d 273 (1956); **Hudson** v. **Newell,** 172 F. 2d 848 (5th Cir. 1949).

150 (1951). The statutory requirement that all persons having or claiming any interest which would be affected by the declaration be made parties controls over any general statutory provisions as to waiver of objections as to defect of parties when not raised by demurrer or answer. *Redick* v. *Peony Park,* 151 Neb. 442, 37 N.W. 2d 801 (1949). The plaintiff, or petitioner, has the duty of joining, as parties, all persons who have or claim any interest which would be affected by the declaration. *Redick* v. *Peony Park, supra.* A petition does not state a cause of action for declaratory relief when it fails to name as a respondent (or defendant) an interested and indispensable party. *Cook* v. *Sikes,* 210 Ga. 722, 82 S.E. 2d 641 (1954).

Where persons whose rights are affected are not made parties to the proceedings, the court should decline to declare the rights of those who are parties. *Jefferson County* v. *Jefferson County Fiscal Court,* 259 Ky. 661, 83 S.W. 2d 16 (1935).

The presence of all necessary parties is jurisdictional and cannot be waived. *Redick* v. *Peony Park, supra.* In order to be entitled to relief by declaratory judgment, the petitioner must prove a legal right capable of, and in need of, protection from claims, demands or objections emanating from a source *competent legally to put the legal interest or right in jeopardy.* *State* v. *Haveland,* 223 Minn. 89, 25 N.W. 2d 474 (1946). The opposition in the case must come from a source competent legally to jeopardize the petitioner's right. *Miller* v. *Stolinski,* 149 Neb. 679, 32 N.W. 2d 199 (1948).

The indispensable and necessary parties in any declaratory judgment action are not only those whose *rights* would be affected thereby, but also those whose *legal interests* in the controversy are conflicting with those of the petitioner. *People* v. *Baker,* 133 Colo. 398, 297 P. 2d 273 (1956). A petition that fails to name as a party defendant (or respondent) anyone whose rights

544

or duties are affected by statutes to be construed in the action should be dismissed for defect of parties. *Axton* v. *Goodman,* 205 Ky. 382, 265 S.W. 806 (1924) (Ky. C.A. 1924); *Worden* v. *City of Louisville,* 279 Ky. 712, 131 S.W. 2d 923 (1939). It should be dismissed if it fails to join all parties whose interests and rights are affected. *Coleman* v. *Henry,* 184 Tenn. 550, 201 S.W. 2d 686.    If jurisdiction is not obtained over indispensable and necessary parties, the action should be dismissed. *People* v. *Baker,* 133 Colo. 398, 297 P. 2d 273 (1956).

Illustrative of the cases cited above are *Axton* v. *Goodman, supra,* and *Coleman* v. *Henry,* 184 Tenn. 550, 201 S.W. 2d 686.

In the *Axton* case, candidates of the Progressive party for presidential elector brought suit under the Declaratory Judgment Act against the Chairman of the State Board of Election Commissioners and the Chairman of a county board of election commissioners, to obtain a declaration of their rights to appoint challengers and inspectors at the general election.    The Attorney General of the State had rendered a written opinion to the Chairman of the Progressive party that they were not entitled to do so.    The court said:

"* * * No one of the defendants has any duties to perform with respect to the appointment of challengers or inspectors, or their admission to, or exclusion from, the booths."

The petition was said to have been properly dismissed because no one whose rights or duties were affected by the statute to be construed was made an adverse party in the proceeding.

In *Coleman* v. *Henry,* 184 Tenn. 550, 201 S.W. 2d 686, the petition sought a declaration construing a statute requiring a financial statement of campaign expenditures to be filed by candidates or their campaign

managers. The defendant was the campaign manager for the successful Democratic candidates. None of the candidates nor the public officials to whom the report would be made were made parties to the suit. Their joinder was held to be necessary and indispensable and their non-joinder fatal on the question of justiciable controversy in a suit for declaratory judgment. The dismissal of the petition on demurrer was sustained.

I sincerely trust that the language in the majority's per curiam opinion as to election controversies can be used to prevent it from opening the floodgate to applications to the courts for advisory opinions. I still subscribe to the belief that judicial controversies are best decided when pounded out on the anvil of advocacy in proceedings between parties whose interests are vitally real, not academic. I further believe that advocacy cannot make its full contribution to our judicial system unless it is invoked from the perspective of the parties really involved. In this case they would be the county election commissioners.

The old adage, "Haste makes waste," states a fact of judicial, as well as everyday, life.

I would affirm the judgment of the circuit court.

CONLEY BYRD, Justice. I disagree with the majority because it is contrary to Ark. Stat. Ann. § 3-608 (Repl. 1956), and because the premise stated in the majority opinion is not sustained by the record or the contention of the parties.

The statute provides:

"It shall be the duty of the County Board of Election Commissioners not less than five (5) days preceding a general election to select and appoint three (3) judges and two (2) clerks for each voting precinct in the respective Counties and to perform

the other duties prescribed, provided however, that two (2) judges and one (1) clerk in each precinct shall be chosen and appointed by two (2) members of the County Board of Election Commissioners representing the majority party and one (1) judge and one (1) clerk at each precinct shall be chosen and appointed by the members of the County Board of Election Commissioners representing the minority party. Provided further that if there are no registered or known members of the minority party in any precinct or precincts within a county the minority party member of the County Board of Election Commissioners is hereby prohibited from naming any person to represent such minority party as a judge or clerk in any such precinct or precincts who is a member of the majority party, and in such event, the County Board of Election Commissioners shall by a majority vote name the judge and the clerk allotted the minority party for any such precinct or precincts . . ."

*"In the event the majority or minority representative on such County Boards of Election Commissioners do not select and appoint their full quota of judges and clerks for each voting precinct, as authorized hereinbefore then the County Board of Election Commissioners by majority vote may fill such vacancy, provided, that in no event shall all of the judges or both of the clerks at any voting precinct be members of the same political party unless there are no members of the minority party registered in said precinct."* (Emphasis mine).

The appellees concede that when a deadlock occurs between the County Chairman of the majority party and the appointed third member, it is the duty of the County Board of Election Commissioners to select by majority vote "known" members of the majority party to serve as such judges and clerk. However, appellants in their brief contend that this is not enough, but that the se-

lection should be those members of the party selected by the Chairman of the majority party. The majority opinion makes two conclusions with respect thereto:

(1) That when the entire County Board makes a selection of two members of the majority party as judges and one member as clerk, the result is that the minority party selects all the judges and clerks leaving the majority party with no representation whatever at the polls; and (2) that when the third member appointed by the State Board of Election Commissioners is unable to agree with the County Chairman of the majority party as to which members of the majority party are to serve as judges and clerks, then such third member has demonstrated that he is not qualified to "represent" the majority party as we used that term in *Ellis* v. *Rockefeller*, 245 Ark. 53.

Apparently the majority does not agree whole heartedly with appellants contention. The conclusions in the majority opinion are not based on logic. As to the first conclusion, I can think of nothing more patently illogical than the statement that, for purpose of insuring a fair election, the Republican Party is without representation at the polls when two "known" Republicans are serving as judges and one "known" Republican is serving as a clerk.

The fallacy of the second conclusion can be best demonstrated by reference to the recent litigation in this court in *Childers* v. *Roberts*, cause #4830, (disposed of by per curiam order on October 21, 1968). Included in the record therein are certified copies of the minutes of the Republican State Convention showing a controversy between Ralph Childers and John Oliger as to which one had been duly selected County Chairman by the township committeemen of Conway County. Until I read the majority opinion, I would not have believed that anyone would say that the third member of the Conway County Election Commission was not properly dis-

charging his duty by insisting that the clerk in some or all of the precincts be a "known" Republican selected from the faction supporting Mr. Oliger. The composition of the State Election Board is now and will continue to be such, by the very nature of the selection process, that it should be given some leeway in the selection of the third member for the purpose of insuring fair elections. It is not inconceivable that a situation could develop in a county of such degrading proportions that the State Board might purposely wish to select a third member of the County Board for the very purpose of preventing manipulation of the ballot through the selection of judges and clerks.

If one will again refer to the statute, *supra,* particularly the italicized portion thereof, he will find that the drafters of the statute anticipated that an impasse could be reached in the method provided for the selection of judges and clerks and that they provided a remedy to prevent the impasse from holding up or interrupting the State's election machinery. Furthermore, in Initiated Act No. 3 of 1948, § 1, Ark. Stat. Ann. § 3-606 (Repl. 1956), it provided:

"For the purpose of this Act (§§ 3-606—3-611), the majority party shall be construed to be that political party polling, in the State of Arkansas, the greatest number of votes for Governor in the last preceding general election and the minority party shall be construed to be that political party polling, in the State of Arkansas, the second greatest number of votes for Governor in the last preceding general election."

How this court can hold that the political party receiving the greatest number of votes for Governor in the last preceding general election can become the "minority party" within the meaning of Ark. Stat. § 3-606 and § 3-608 without rewriting the statutes to fit a particular exigency is beyond my comprehension.

For these reasons, I respectfully dissent.