No. 14,265.

Highland Sales Company et al. *v.* Robertson.

(90 P. [2d] 2)

Decided April 17, 1939.

Mr. Clarence L. Ireland, Mr. R. H. Blackman, for plaintiffs in error.

Mr. David Rosner, for defendant in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

To reverse a judgment of the district court in favor of plaintiff, defendants prosecute a writ of error. Harry A. Robertson was plaintiff and Highland Sales Company, E. H. Davis, Hoyte Fuller and Silas Wootton were de-

fendants in the trial court. They will be designated as they there appeared or by name.

An understanding of the controversy requires a rather comprehensive knowledge of the situation out of which it arose. As disclosed by the evidence it was substantially as follows: Robertson and the three individual defendants had been employed for varying periods of time by the Bancker-Nicholls Brokerage Company, a corporation, engaged in the business of selling merchandise at wholesale, principally foods and liquors. As such broker it had a large number of "accounts." It appears that what the parties and witnesses mean by the term "account" is nothing more than an agency, apparently revocable at any time, to sell the merchandise of some producer or distributor within a specified territory for an agreed commission. All of the accounts included the right to sell throughout the state of Colorado, and some throughout several surrounding states. It appears that while the corporation, Bancker-Nicholls company, was the agent in so far as the various principals were concerned, as between the individual parties plaintiff and defendant while they were with that company, the latter apportioned the profits largely on the basis, not of stock ownership but in accordance with the amount of income produced by each individual stockholder, from the "accounts" which he controlled or worked. Some of the accounts were developed or procured largely by one or the other of the various employees and in each such case the account was given personal attention by the one through whose efforts it had been secured. Robertson had been largely instrumental in developing liquor accounts and sales; Davis in developing food accounts and sales; Fuller was with the company but a short time and his work was largely selling the product of such accounts as were turned over to him. It does not appear what accounts, if any, Wootton had developed but he also was engaged in working certain accounts that were allotted to his department of the business. Mr. Hockensmith owned

51 per cent of the stock in the Bancker-Nicholls company, Robertson and Davis the remaining 49 per cent divided equally between them. Hockensmith was devoting time to another business in which he was interested and this caused dissatisfaction on the part of Robertson and Davis and negotiations were initiated with a view to their acquiring the Bancker-Nickolls company. These negotiations were unsuccessful. June 6, 1935, Robertson, Davis, Fuller and Wootton severed their relationship with the Bancker-Nicholls company and the next day organized the Highland Sales Company. Immediately by wire and by letter, and shortly thereafter by personal solicitation, they began a campaign to secure the accounts they had worked in the Bancker-Nicholls company, for the new company. It appears that they were successful in securing seventeen of the thirty-one accounts of firms theretofore represented by that company.

The record discloses that there was a general understanding between the organizers of the new company that its stock would be equally divided between them and that each would be responsible for a department which would be a certain number of accounts to which he would give attention and for the success of which he would be responsible. Ten per cent of the profits from all sales were to be paid in to the company as a reserve and for working capital, in any division of which all were to share equally. Otherwise they were to look for their compensation to the commissions from the accounts in their respective departments. There is no question on the record that this agreement was predicated on the basis that the four company members would devote their individual attention to sales, the securing of new business, and the advancement of the general interests of the Highland company. Defendants Davis, Wootton and Fuller all denied that they had any agreement with Robertson not predicated on his remaining with the new company and the testimony of Robertson himself does not definitely show anything to the contrary.

After the initial work of organizing the new company was completed Robertson went to New York with the objective of securing certain liquor accounts, which are referred to as the Seagram account, the Ben Burk account and the Shefflin account. All of these theretofore had been represented by the Bancker-Nicholls company. It appears that the accounts were competitive and that the Seagram company did not wish longer to be represented by a broker handling competitive accounts. It was considering the matter of having its own representative in the Colorado territory. Having known of Robertson's work in handling the Seagram account, that company made him what he considered an attractive offer to represent it and he accepted the offer. This fact he communicated to Fuller by telephone requesting that it be kept secret until he personally told his other associates. Fuller complied with this request and did not disclose the information.

Upon the return of Robertson to Denver he began negotiations to secure an agreement with his associates that he might have until January 1, 1396, to determine definitely whether he would return to and devote his time to the Highland company. Unquestionably Robertson had had a large part in securing and developing many of the accounts that came over from the Bancker-Nicholls company to the new company. It appears also that the salesman in charge of an account has much to do with whether the representation is profitable to the principal and for this reason the salesman who is to work it may be the controlling factor in the principal's placing of the account. The other members of the new company were therefore very anxious to have Robertson remain with them rather than to represent an account in direct competition with them. The record is clear that after Robertson entered the employ of the Seagram company on August 1st, the other members of the Highland company refused to give him longer than October 1st to determine whether he would return to that company.

On October 5th Robertson, as an officer and director of the Highland Sales company, resigned and turned back to the company his qualifying share of stock. Davis had paid into the company approximately $4,700 to be used while it was becoming established and building up a reserve. Robertson claimed a part of this, the amount to which he was entitled being in dispute. Davis and Robertson finally agreed upon $3,118 in settlement of their dispute and this amount immediately was paid to him out of the company account. The due date of a loan of $1,700 he had made to the company was accelerated to the following January 1st and on that date repaid to him. After October 5th Robertson had no further connection with the Highland Sales Company other than that he held its note for $1,700, and from that time he devoted his entire attention to selling Seagram liquors in competition with certain lines of liquor which the Highland company represented.

Prior to October 5th, when Robertson's connection with the Highland company finally ceased, there had been much discussion about whether he should be paid anything for the accounts which he claimed and which there is little doubt he was largely instrumental in developing, and which came to the new company partly on account of the fact that he was to be associated with it. At Robertson's suggestion drafts of agreements were prepared providing in substantial effect that from various accounts to be handled by his remaining associates after his connection with the company was severed, he should receive from Wootton and Fuller the first year 25 per cent of the net profits, and during the next four years 20, 15, 10 and 5 per cent of the successive yearly net profits and that after the expiration of five years he should have no further interest in such accounts. These drafts were prepared and discussed but did not receive the approval of Fuller and Wootton and in some respects were unsatisfactory to Robertson. They were never signed.

Plaintiff instituted this action under the Uniform De-

claratory Judgments Law, sections 78 to 92, chapter 93, '35 C. S. A., to procure a judgment declaring: First, that plaintiff had a contract with Fuller and Wootton entitling him to the percentages of the net profits from sales made by them in accordance with the oral agreements entered into between him, Robertson, and said Fuller and Wootton, the terms of which he claimed are as set forth in said unexecuted drafts. Second, That he, Robertson, was entitled to one fourth of the ten per cent of net profits from all accounts deposited with the company as a reserve. Third, That the plaintiff have judgment against defendants, Davis, Wootton and Fuller individually in varying amounts for the value of the accounts he says he transferred to them, alleged to be of the aggregate value of $42,275. Fourth, For $500 salary alleged to be due him for the month of July, 1935, from the Highland Sales Company. As incidental to the foregoing relief the plaintiff prayed that the court retain jurisdiction of the cause for the purpose of enforcing, by a proper accounting, compliance with the contract, if such should be declared and established.

The trial court after considering the pleadings and evidence, properly, in our opinion, denied plaintiff any recovery for the alleged value of the accounts transferred; denied him recovery of a one-fourth or any interest in the reserve fund of the company; and denied him any recovery for salary for the month of July, 1935. However, it did adjudge there was an oral contract between Robertson, and Fuller and Wootton that they would pay him the percentages of net profits from their sales, as set forth in the unexecuted agreements, for the period of five years, and retained jurisdiction of the cause for the purpose of enforcing the necessary accounting. The court held that it was unnecessary to determine whether there is a property right in such so called brokerage accounts, because it found there was no agreement to pay Robertson anything for the accounts which he claimed to have been transferred. This latter, we think,

was a proper holding under the issues framed and the testimony as it appears in the record.

■ In rendering its decision the trial court stated that the case had many of the elements of a joint adventure and that it was in fact such. It quoted the following statement from *Hoge v. George,* 27 Wyo. 423, 200 Pac. 96: "The relation of joint adventurers is controlled largely by the principles of the law of partnership, yet a joint adventure and partnership are not identical." If the court is correct in its determination that the parties were joint adventurers at the inception of the Highland Sales Company, this is of no avail to Robertson. Before the adventure was a month old he abandoned it and began, not to further its interest, but to work against it by selling a competing line of merchandise. He removed all of his money from the company's treasury as soon as possible after his abandonment of the adventure, and at a time when it was sorely in need of funds. He had no agreement as to what he should receive from his co-adventurers when, without asking them and against their wishes, he left them to the result of their own efforts, whether that might mean success or failure for the project they had all set out to carry forward. When Robertson refused individually to bear any burden of the unconsummated joint adventure he in legal effect disclaimed any interest in the possible profits.

■ We are unable to discover any evidence in the record upon which to base the findings that there was any contract between Fuller and Robertson or Wootton and Robertson, to pay any part of the proceeds from Fuller's and Wootton's sales to Robertson after Robertson left the company. The finding and judgment of the trial court that there were such oral contracts being unsupported by any evidence cannot stand.

Judgment reversed.

MR. JUSTICE FRANCIS E. BOUCK, MR. JUSTICE BURKE and MR. JUSTICE BOCK not participating.