## No. 17,615.

PEOPLE, EX REL. INTER-CHURCH TEMPERANCE MOVEMENT,
ET AL. *v.* GEORGE J. BAKER, AS SECRETARY OF
STATE OF COLORADO.
(297 P. [2d] 273)

Decided April 16, 1956.    Rehearing denied June 4, 1956.

Mr. Wayne D. Williams, Mr. Kelly O'Neall, Mr. William H. Burnett, for plaintiffs in error.

Mr. John C. Banks, City Attorney, Mr. Joseph E. Newman, Assistant, for defendant in error Charles J. Lowen, Manager of Safety and Excise of the City and County of Denver.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Omer Griffin, Assistant, for defendant in error George J. Baker, Secretary of State of the State of Colorado.

*En Banc.*

Mr. Justice Holland delivered the opinion of the Court.

The People of the State of Colorado, ex rel. Inter-Church Temperance Movement of Colorado; Inter-Church Temperance Movement of Colorado, a non-profit corporation of the State of Colorado; Ida Payne Smith; Evelyn Kennedy Boston; Leslie Logan; C. P. Gehman; Frank G. Rutherford; and Kenneth Graul, as plaintiffs, began an action against George J. Baker (substituted for Homer M. Bruce) as Secretary of State of the State of Colorado, and Edward O. Geer (substituted for Charles J. Lowen) as Manager of Safety and Excise of the City and County of Denver in the State of Colorado, as defendants, in which plaintiffs sought relief under our Uniform Declaratory Judgment Act, declaring, determining and adjudging that chapter 149, Session Laws of Colorado, 1953,

is unconstitutional and void and violates Article XXII of the Constitution of the State of Colorado, or plaintiffs pray, in the alternative, for an injunction, because, they allege, said amendatory act violates the provisions of Article XXIV of our Constitution.

Defendants having answered, trial was had to the court without the intervention of a jury, and, at the conclusion of all of the evidence, judgment of dismissal was entered. Plaintiffs are here by writ of error seeking a reversal.

Article XXII of the Constitution of the State of Colorado prohibits the establishment or maintenance of any saloon and was adopted on November 8, 1932. Section 2 of Article XXIV of the Constitution of the State of Colorado provides, inter alia, that 85% of the net revenues derived from any all excise taxes now or hereafter levied upon sales at retail, together with 85% of all license fees imposed under the provisions of chapter 189, S.L. 1935, shall be made a part of the Old Age Pension Fund.

Under the provisions of the Liquor Code of 1935, chapter 89, section 18, '35 C.S.A. a restaurant was thus defined:

" 'Restaurant' means an establishment provided with special space and accommodations, where, in consideration of payment, *meals are habitually furnished to guests,* and whose principal business is the sale of meals and in which room nothing is sold excepting meals, food, drinks, and tobaccos, and where malt, vinous and spirituous liquors shall not be served at any place excepting tables and lunch counters with stools securely fastened to the floor. * * *" (Emphasis supplied.)

This definition of a restaurant was amended in 1951, chapter 211, S.L. '51, retaining in the mandatory 1951 act the exact wording of section 18, supra, herein set forth and adding thereto provisions which are not relevant or pertinent here.

Chapter 149, Session Laws of Colorado 1953 amended section 18, chapter 89, '35 C.S.A., and so far as necessary

for our consideration here it reads: " 'Restaurant' means an establishment with special space and accommodations, where in consideration of payment, *food, drinks, tobaccos and candies are furnished to guests,* and in which room nothing is sold excepting food, drinks, tobaccos and candies, and where malt, vinous and spirituous liquors shall not be served at any place, excepting tables and counters with stools." (Emphasis ours.)

The Secretary of State is the state licensing authority (C.R.S. '53, 75-2-6); the Manager of Safety and Excise is the local licensing authority in the City and County of Denver; the council or board of trustees is the local licensing authority in any other city or town, and the board of county commissioners is the local licensing authority outside the limits of cities and towns. C.R.S. '53 75-2-9.

Plaintiffs' complaint contains three causes of action (claims), in each of which it is alleged that the Inter-Church Temperance Movement of Colorado is a non-profit corporation organized and existing under the laws of the state of Colorado, its membership consisting of churches and religious denominations. It is dedicated to the principles of sobriety, good citizenship and temperance, and, as such, is interested in the enforcement of Article XXII of the Constitution of the State of Colorado. It brings the action on behalf of itself and all others similarly situated. The individual plaintiffs are all citizens and taxpayers of the City and County of Denver and all, except Logan, are owners of real estate situated in the vicinity of "an unlawfully licensed saloon." They sue on their own behalf and all other property owners similarly situated.

George J. Baker is the duly elected, qualified and acting Secretary of State, and as such is the authorized liquor licensing authority for the state of Colorado. Defendant Geer is the duly authorized licensing authority for the City and County of Denver.

It is alleged that defendants, acting under the amend-

atory act hereinbefore referred to, have issued "hotel and restaurant" licenses and "beer and wine" licenses, and in so doing are authorizing the establishment and maintenance of saloons in violation of said Article XXII of the Constitution. Plaintiffs further allege that they have no adequate remedy at law and that the granting of the relief by them sought will avoid a multiplicity of suits and settle a question of vital importance.

In the second cause of action (claim) the allegations of the first cause of action (claim) are incorporated by reference, and it is further alleged that defendants have and threaten to continue issuing licenses known as "hotel and restaurant licenses" to licensees whose principal business is other than the sale of food and meals whether measured by gross sales, numbers of sale or gross profits, and where malt, vinous and spirituous liquor are sold at retail by the drink for consumption on the premises without food and meals.

The third cause of action (claim), for all purposes necessary for our consideration, is identical to the second cause of action (claim).

Defendants filed their joint answer consisting of fifteen separate defenses, the second of which is the only one which we deem necessary for our consideration and determination. We specifically decline to express any opinion whatever as to other defenses contained in the answer, as well as the other interesting and important questions presented.

The second defense, to which we direct our attention, concerns the absence of indispensable parties who may be affected by the relief sought, having been neither joined nor appeared as defendants herein.

Plaintiffs' evidence discloses that on December 13, 1954, there were 342 restaurant and hotel licenses issued in the City and County of Denver where malt, vinous and spirituous liquors were sold, and at the same time there were 1174 such licenses issued in the state of Colorado. Each licensee under the provisions of C.R.S. '53,

75-2-22, has paid to the Department of Revenue an annual license fee of $25.00 for his state license and has paid to the town, city, county or city and county local licensing authorities an annual fee of $325.00. If the 1174 licensees mentioned are operating their business in strict compliance with the provisions of chapter 149, S.L. '53, and this act is declared to be unconstitutional as violative of the provisions of Article XXII or Article XXIV of our state Constitution, their licenses, which are quasi property interests, will become null and void by a judgment of this court in an action in which they are not made parties, and in which they have no representation. Furthermore, defendant Geer, as manager of safety and excise in the City and County of Denver, is sued as a local licensing authority and does not by any reference in the complaint act as a representative of the local licensing authorities in towns, cities or counties.

Our Declaratory Judgment Act is incorporated in the Rules of Civil Procedure, and is therein found as Rule 57, R.C.P. Colo. It provides that its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and likewise provides, (f) "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." It also provides, (j) "When declaratory relief is sought, *all persons shall be made parties, who have or claim any interest which would be affected by the declaration,* and no declaration shall prejudice the rights of persons not parties to the proceedings. * * *" (Italics ours.)

■■ It seems plain to us, notwithstanding authority to the contrary, that all "parties who have or claim any interest which would be affected by the dcelaration" must be made parties to the proceeding, for neither in the declaratory judgment action nor in any other judicial proceeding called to our attention may the rights of

persons not parties to a judicial proceeding be bound by the action of a court in that proceeding. The court should have refused to entertain this action because judgment would not terminate the uncertainty or determine the controversy. 6 Moore's Federal Practice (2d ed.) Sec. 57 (4) p. 3032. Declaratory judgment actions should be considered only in cases where "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." Borchard, Declaratory Judgments (2d ed.) p. 200.

"The general or primary purpose of a declaratory judgments statute is to provide a ready and speedy remedy, in cases of actual controversy, for determining issues and adjudicating the legal rights, duties, or status of the respective parties, before controversies with regard thereto lead to the repudiation of obligations, the invasion of rights, and the commission of wrongs. * * * " 1 C.J.S., p. 1022, §18 (3).

"A declaratory judgment action or proceeding must be formally presented by making the proper persons parties thereto, that is, persons who are adversely interested in the matter as to which the declaratory judgment is sought, and whose relation thereto is such that a judgment or decree will operate as res judicata as to them; persons interested on one side only of the controversy are not sufficient parties although they may disagree as to the law." 1 C.J.S., p. 1048, §18 (aa).

"All persons who have or claim a substantial interest in the subject matter of the controversy, which would be affected by the declaratory judgment, and whose presence is necessary to a complete and effective determination of the controversy and rights which plaintiff seeks to have declared, are necessary parties to the action, and such parties must be before the court, and be given an

opportunity to be heard as to their own rights or defenses." 1 C.J.S., p. 1050, §18 (bb).

"A case for a declaratory judgment, under a statute providing for declaratory judgments in cases of actual controversies only, which shall have the effect of final judgments, must be formally presented with proper parties." 16 Am. Jur., section 55, page 327.

"The general rule that all persons interested in the controversy must be parties to an action for declaratory relief requires that, ordinarily, all interested persons who are not plaintiffs be made defendants. * * * *" 16 Am. Jur., section 61, page 330.

"A plaintiff, seeking a determination of any cause by means of a judgment declaring rights, liabilities and jural relations, must comply with the provisions of the declaratory judgment statute by naming all of the persons as parties who have a right to defend the action, or who are interested therein, or who will be affected by the making of a declaration of rights." 1 Anderson, Declaratory Judgments, p. 338, §175.

█ It is well settled that the court may refuse to render declaratory judgment or decree, which, if it was rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.

"It is a basic rule of declaratory judgment law, sustained by the adjudicated cases, that it is the duty of the court to make a full and complete declaration, and the court, before granting such relief, must be convinced that it will stabilize disputed legal relations, since the court is limited by the terms of the statutes, as a general proposition, that the declaration must end the litigation or fix and settle the rights of the parties." 1 Anderson, Declaratory Judgments, p. 507, §226.

This court, in *City and County of Denver v. Denver Land Co.*, 85 Colo. 198, 274 Pac. 743, had this to say respecting the absence of parties who would be affected by a declaratory judgment in which they were not named as parties thereto:

"The only parties before this court in this action are the defendant city, which has in contemplation the adoption of a public improvement, the cost of the construction of which contemplates an assessment upon property therein on the area plan, and plaintiffs, owners of property within the district, and they are opposed to the area plan and favor the benefit plan which only, they say, is valid. The complaint itself alleges that there are many owners of property within the district who are in favor of the area plan. They are not parties to this action and they would not be bound by any judgment we might render. To pronounce a declaratory judgment in this case, when parties who favor the area plan would not be bound thereby, would be not to save costs or time. To determine here which of the two plans should be adopted by the city would or might give rise to a flood of litigation, instituted by property owners within the district not parties to this proceeding who object to the benefit plan and insist upon the adoption of the area plan. Such a proceeding as this is unauthorized under the existing facts. Desirable as it might be to have an announcement of this court upon this question, it would be improper for us to decide it in the absence of the necessary parties."

In *Continental Mutual Insurance Co. v. Cochrane,* 89 Colo. 462, 4 P. (2d) 308, the court, after quoting that portion of the opinion in *City and County of Denver v. Denver Land Co.,* supra, hereinabove referred to, said:

"This case [City and County of Denver v. Denver Land Company] is here controlling. Assuming, but not deciding, that a controversy within the contemplation of the act [Declaratory Judgment Act] has arisen, it is obvious that the charter membership policyholders have such a substantial interest that they should have been made parties to the proceeding, and that in their absence a declaratory judgment would not terminate the uncertainty or controversy."

Plaintiffs, in support of their position that all neces-

sary parties are before this court to warrant it in exercising its rights and duties under the Uniform Declaratory Judgment Act, cite *People ex rel. Stonebraker v. Wood,* 90 Colo. 506, 10 P. (2d) 331, and *Town of Pagosa Springs v. People,* 23 Colo. App. 479, 130 Pac. 618, and quote rather extensively from Stonebraker-Wood, supra. We have examined the record in the Stonebraker-Wood litigation and find that it was an action in mandamus brought by Stonebraker to force members of the city council of the city of Trinidad to remove obstructions from its streets and sidewalks. These obstructions were alleged to be certain gasoline pumps. No question was therein raised as to Stonebraker's right to maintain the action, but a motion to dismiss was granted because of a defect of parties defendant. The owners of the gasoline pumps were not made parties defendant, and no relief was sought against them for it appears in the record that their rights were not legal rights acquired under any license or ordinance, but their pumps were maintained by them by sufferance rather than by legal right. We therein determined that "these pump operators are proper parties, but neither indispensable nor necessary. Relator is not concerned with their appearance. He only asks that the city do its duty. If the latter wishes the operators made parties it may bring them in."

Counsel also rely upon the decision of our Court of Appeals in the case of Town of *Pagosa Springs v. People, supra.* This case was the outgrowth of an election held in Pagosa Springs under a statute providing for the creation of the anti-saloon territory, and it was contended by an elector that the canvass of the votes cast at the election was erroneous in that illegal votes were cast thereat. Subsequent to the election, the city council granted liquor licenses which were in force and effect at the time of the decision of the trial court determining that the majority of the voters in the Town of Pagosa Springs had voted it anti-saloon territory, and it was contended that these licensees were necessary parties

defendant. The trial court held that the holders of these licenses were not indispensable and necessary defendants, and upon appeal to our court of appeals the trial court was affirmed. We do not believe that decision is at all controlling here for we find in the local option law under which this case was determined there is a provision which makes that case radically different from the situation in the instant case. The statute under which that case was determined provides:

"Whenever 'Anti-Saloon Territory' has been created under the provisions of this act, there shall be refunded to all keepers of dram shops, saloons or other places where intoxicating liquors are sold within said territory, a pro rata part of the amount paid either to the state, county or municipality for such license, the said refund to be pro rated for the number of days for which said license has yet to run before the expiration of the period for which said license was granted, provided, however, that said license was regularly issued according to law by the state, county or municipality granting the same." Session Laws of Colorado 1907, ch. 198, sec. 16, p. 504.

There is no such provision in the instant case, and, as a matter of fact, it may well be that under the provisions of C.R.S. '53, 72-2-11, no part of the substantial license fees paid by the licensees can be refunded.

The indispensable and necessary parties in any declaratory judgment action are those who have conflicting legal interests in the controversy to be adjudicated and whose rights will be affected thereby, and the trial court should insist that jurisdiction be obtained of all such parties either personally or in an appropriate class action under the provisions of Rule 23, R.C.P. Colo.; otherwise the court should dismiss the action, for a declaratory judgment action is intended to completely terminate the controversy, and if the court does not have jurisdiction of such interested parties, its judgment would not settle the questions presented and thus lead to multifarious litigation.

Without attempting to cite the numerous cases outside of our jurisdiction in which the courts have discussed the question of necessary and indispensable parties, the following are illustrative of what is believed to be the general rule: *Arlington Oil Co. v. Hall, State Treasurer,* 130 Neb. 674, 266 N.W. 583; *Morton v. Pacific Construction Co.,* 36 Ariz. 97, 283 Pac. 281; *Lloyd v. Los Angeles County,* 41 Cal. App. (2d) 808, 107 P. (2d) 622; *State ex rel. v. Board of County Commissioners,* 128 Kan. 516, 279 Pac. 1; *Blodgett v. Orton,* 14 Wash. (2d) 270, 127 P. (2d) 671; *Redick v. Peony Park,* 151 Neb. 442, 37 N.W. (2d) 801; *Franklin Life Ins. Co. v. Johnson,* 157 F. (2d) 653; *United Slate, etc. v. United Brotherhood, etc.,* 185 Md. 32, 42 Atl. (2d) 913; *Stahl v. Allchin,* 155 Neb. 412, 52 N.W. (2d) 251; *Wisconsin Pharmaceutical Assn. v. Lee,* 264 Wis. 325, 58 N.W. (2d) 700; 9 U.L.A. p. 349.

We hold that before a declaratory judgment is warranted in an action such as is presented here, the court must acquire jurisdiction of all parties whose rights are to be determined or whose interests are affected. Although the trial court, as we have held, should have declined to entertain the action because of the absence of necessary and indispensable parties, its judgment of dismissal was right and is affirmed.

Mr. Justice Moore dissenting:

Upon consideration of the petition for rehearing and a re-evaluation of the issues presented in this cause, I must withdraw my approval of the opinion of the court and now respectfully dissent from the views therein expressed.

It is my opinion that the questions presented by the prayer for injunctive relief should be decided upon the merits, and that all necessary parties are before the court to warrant disposition of the action upon the merits as between those parties.