ZAB, INC.; Zalman Resources, Inc.;
Daven Corporation; and Sport
Resources, Inc., Petitioners

v.

BERENERGY CORPORATION,
Respondent.

No. 04SC547.

Supreme Court of Colorado,
En Banc.

June 5, 2006.

**253**

Lindquist & Vennum P.L.L.P., Charles F. Brega, Scott T. Rodgers, Denver, Colorado, Attorneys for Petitioner Zab, Inc.; Zalman Resources, Inc.; and Sport Resources, Inc.

Silver & DeBoskey, P.C., Joe L. Silver, Brian T. Moore, Denver, Colorado, Attorneys for Petitioner Daven Corporation.

Horowitz/Forbes, LLP, Jay S. Horowitz, Peter C. Forbes, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' opinion in *Berenergy Corp. v. Zab, Inc.*, 94 P.3d 1232 (Colo.App.2004), and determine whether relief is appropriate under the Colorado Uniform Declaratory Judgment Law (CUDJL) to declare the existence of an oral contract and any rights or duties contained therein.

In light of the statutory language as a whole, we hold that a trial court may exercise its discretion to declare the existence of an oral contract and, if one exists, the terms of that contract, where such relief would "terminate the controversy or remove an uncertainty." § 13–1–109, C.R.S. (2005). In this case, declaratory relief would terminate the controversy and remove uncertainty by defining any contractual relationship between Berenergy and the Beren Sons' Corporations. Accordingly, we affirm the court of appeals and remand this case to the trial court for its consideration of Berenergy's motion for declaratory judgment.

## I. Facts and Procedural History

Sheldon Beren formed Berenergy Corporation ("Berenergy") in 1981 to invest in drilling and acquisition ventures of oil and gas wells. Before his death in 1996, Sheldon Beren was the president and sole shareholder of Berenergy.

In 1985, David I. Beren, Zev A. Beren, Daniel J. Beren, and Jonathan Z. Beren (collectively the "Beren Sons") each individually incorporated an independent, wholly owned S-corporation for the purpose of participating in oil and gas drilling acquisition ventures

with Berenergy.[1] These four corporations (collectively the "Beren Sons' Corporations") are the Petitioners in the instant action.

Berenergy financed the Beren Sons' Corporations' acquisition of a ten-percent interest in all of the property acquired thereafter. Monthly revenue from the joint holdings was either applied to the loan balances owed by the Beren Sons' Corporations to Berenergy or distributed to them in equal ten-percent portions. Berenergy kept the remaining sixty-percent.

Between 1986 and 1991, Berenergy charged the Beren Sons' Corporations variable rates to cover the overhead costs on the jointly owned wells. In 1991, Berenergy altered the overhead charge to $150.00 per well per month, proportionately reduced, on all properties involving the Beren Sons' Corporations. Berenergy has charged $150.00 per well per month since that time. That charge was applied retroactively to the acquisition date on all then-current projects.

Sheldon Beren died in 1996. At that time, his estate obtained his stock in Berenergy and operational control over the corporation. A dispute arose between Berenergy and the Beren Sons' Corporations as to whether Berenergy had a contractual obligation to continue charging the $150.00 per well per month overhead rate. The parties have not produced a written contract evidencing Berenergy's obligation to continue charging the $150.00 rate.

Pursuant to a 1998 order by the probate court, Sheldon Beren's estate attempted to sell all of its Berenergy interests. Berenergy alleges the estate failed to sell its interest in the corporation because of the uncertainty surrounding the $150.00 per well per month overhead rate.

To clarify its obligations, Berenergy sought a court declaration of (1) the legal relationship between Berenergy and the Beren Sons' Corporations and (2) whether Berenergy had a contractual obligation to continue charging Petitioners the $150.00 fixed rate. Berenergy also sought to recover the amount undercharged since Sheldon Beren's death.

The trial court dismissed Berenergy's claim for failure to state a claim on which relief may be granted. As relevant to this appeal, the trial court alternately held Berenergy's claim must be dismissed because the CUDJL prohibits a trial court from declaring the existence of an oral contract or the terms of one.

The court of appeals reversed. As relevant here, the appellate court first reasoned that the CUDJL permitted a declaration of rights under a purported oral contract. *Berenergy Corp.*, 94 P.3d at 1235–36. Additionally, the court of appeals concluded the trial court incorrectly dismissed Berenergy's complaint for failure to state a claim on which relief could be granted. *Id.* at 1236.

The Beren Sons' Corporations seek review of the appellate court's ruling that the CUDJL permits a declaratory judgment establishing the existence and terms of an oral contract.[2]

## II.  Analysis

■ In this case, we are asked to decide whether a trial court may exercise its discretion to declare the existence of an oral contract and, if one exists, any duties or obligations contained therein under the CUDJL. In making this determination, we necessarily consider the statutory language of the CUDJL, codified in sections 13–51–101 to 115, C.R.S. (2005) and C.R.C.P. 57.

### A.  Statutory Interpretation of the CUDJL

■ Whether a trial court may exercise its discretion in granting declaratory relief under the CUDJL is a matter of statutory interpretation, which we review de novo.

---

1.  Specifically, Zev Beren incorporated Zab, Inc.; David Beren incorporated Daven Corporation; Jonathan Beren incorporated Zalman Resources, Inc.; and Daniel Beren incorporated Sport Resources, Inc.

2.  Specifically, we granted certiorari on the following issue:
    Whether the Court of Appeals erred when it concluded that a declaratory judgment action may be filed to determine the existence of, or rights under, an oral contract.

See *Gorman v. Tucker ex rel. Edwards,* 961 P.2d 1126, 1128 (Colo.1998); *see also Tidwell ex rel. Tidwell v. City & County of Denver,* 83 P.3d 75, 81 (Colo.2003).

■ In making this determination, we turn to traditional principles of statutory interpretation. When interpreting the meaning of a statute, our goal is to effectuate the intent of the General Assembly. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187, 1190 (Colo.1996). To achieve that end, we must consider the statutory scheme as a whole to give a consistent, harmonious, and sensible effect to each individual section. *Charnes v. Boom,* 766 P.2d 665, 667 (Colo.1988). The legislative declaration or purpose aids in our review. § 24203(g), C.R.S. (2005). The legislative declaration of the CUDJL specifically provides that the act be liberally construed and administered. § 13–51–102; *Colo. State Bd. of Optometric Exam'rs v. Dixon,* 165 Colo. 488, 493, 440 P.2d 287, 289 (1968). The plain language of the CUDJL also instructs us to interpret the act in accordance with its "general purpose to make uniform the law of those states which enact it and to harmonize, as far as possible, with federal laws" related to declaratory judgments. § 13–51–104, C.R.S. (2005).

The CUDJL also recognizes that the courts have the broad "power to declare rights, status, and other legal relations." § 13–51–105, C.R.S. (2005). By failing to define the types of rights or legal relations over which a court may issue relief, the CUDJL recognizes that the trial courts may adjudicate a wide array of subject matters.

■ The limitations of this broad power are recognized in section 13–51–110, C.R.S. (2005). That section states: "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, *would not terminate the uncertainty or controversy giving rise to the proceeding." Id.* (emphasis added). Together, those sections indicate that a trial court may exercise its discretion to "declare rights, status, and other legal relations," section 13–51–105, so long as the declaratory judgment would "terminate the uncertainty or controversy," section 13–51–110. *See generally People ex rel. In-*

ter–Church Temperance Movement of Colo. *v. Baker,* 133 Colo. 398, 404, 297 P.2d 273, 277 (1956). In light of CUDJL's mandate that the act be liberally construed and administered, the combination of these sections suggests that a trial court may declare the existence and terms of an oral contract where such a judgment would terminate an uncertainty or controversy.

The Beren Sons' Corporations, however, claim declaratory judgments are limited to written contracts. To support their argument, they rely on section 13–51–106, C.R.S. (2005). Petitioners argue the section's express reference to "written contracts" and "other writings constituting a contract" requires us to construe all other references to "contracts" in that section as written contracts:

> Any person interested under a deed, will, *written contract,* or other *writings constituting a contract or* whose rights, status, or other legal relations are affected by a statute, municipal ordinance, *contract,* or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, *contract,* or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

§ 13–51–106 (emphasis added). They claim the express inclusion of "written contracts" implies the exclusion of oral contracts.

■ Petitioners correctly note the first portion of the statute is limited to written contracts: "Any person interested under a ... written contract, or other writings constituting a contract...." § 13–51–106. However, the word "or" separates the next clause: "*or* whose rights, status, or other legal relations are affected by a ... contract...." *Id.* (emphasis added). Generally, we presume the disjunctive use of the word "or" marks distinctive categories unless the legislative intent is clearly to the contrary. *Carlson v. Ferris,* 58 P.3d 1055, 1057 (Colo.App.2002); *see Armintrout v. People,* 864 P.2d 576, 581 (Colo.1993). In the absence of expressed intent to the contrary, the arguable intent of the legislature in this instance was to separate the first clause from the second clause.

The second clause refers only to "contracts" and not to "written contracts" or "other writings constituting a contract," suggesting the second clause is not limited by the qualifier "written."

For the aforementioned reasons, the second clause of section 13–51–106 could be read to include only written contracts or be open to a broader group of contracts. Thus, it is unclear whether the language of section 13–51–106 prohibits the declaration of rights and duties arising under oral contracts.

Recognizing the inherent ambiguity in section 13–51–106, standing alone, we proceed to consider the other sections of the statute to determine whether declaratory relief is appropriate under the CUDJL. *See generally Allen v. Charnes*, 674 P.2d 378, 381 (Colo. 1984). The legislature expressly directed that the act be construed to make uniform the laws of the states and, where possible, the federal judiciary. § 13–51–104. Thus, we first review the substantial harmony among the states and the federal judiciary in allowing declaratory relief over oral contract disputes. We then consider the statutory scheme as a whole. *Charnes*, 766 P.2d at 667. The language and purpose of the act also permit the declaration of the existence and terms of an oral contract.

### B. Other Jurisdictions

The CUDJL requires us to interpret and construe the law "as to effectuate its general purpose to make uniform the law of those states which enact it and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." § 13–51–104 (emphasis added). Although other jurisdictions have not universally accepted that courts may declare rights arising under an oral contract in all situations, a substantial number of the states have. In this subsection, we recount the majority and minority reasoning employed by the states and conclude that the majority reasoning is more persuasive. We then turn to the federal courts for more guidance in understanding the plain meaning of the CUDJL.

### 1. Other States

A considerable number of the states to adopt the Uniform Declaratory Judgment Act ("Uniform Act") consider oral contract disputes within the discretion of the trial court. *See Lorenze v. Church*, 172 W.Va. 369, 305 S.E.2d 326, 328 (1983) (listing states "allowing the declaration of rights arising under oral contracts"). While many of the state courts accept that proposition without analysis, *see, e.g., Barnett Chevrolet Co. v. Collins*, 275 S.W.2d 559, 560 (Tex.Civ.App. 1955), the reasoning of the Missouri Supreme Court and West Virginia Supreme Court is persuasive here. The Missouri court concluded that the broad powers of the trial courts were not limited by section 2 and, therefore, declaratory judgments were permissible in oral contract disputes. *Temm v. Temm*, 354 Mo. 814, 191 S.W.2d 629, 632 (1945). The West Virginia court similarly determined that declaratory relief was not limited to written contracts because of the remedial purpose of the act and the substantial accord among jurisdictions in affording relief. We review both states' analyses.

To aid in our review of the analyses used by different states, we refer to specific sections of the Uniform Act under the labels originally proposed by the uniform commission. As pertinent to our discussion, section 1 of the Uniform Act corresponds to section 13–51–105 of the CUDJL. Section 2 of the Uniform Act matches section 13–51–106 of the CUDJL. The CUDJL labels section 5 of the Uniform Act section 13–51–109, C.R.S. (2005). Section 12 of the Uniform Act corresponds with section 13–51–102 of the CUDJL.

In determining that the trial courts have the discretion to issue declaratory relief in oral contract disputes, Missouri considered section 2 alongside sections 1 and 5. Section 1, as previously quoted, recognizes that trial courts have the broad "power to declare rights, status, and other legal relations." Section 5 explains that this broad power is not limited by section 2:

> The enumeration in *sections 2 to 4 does not limit or restrict the exercise of the general powers conferred in section 1*, in any proceeding where declaratory relief is

sought, in *which a judgment or decree will terminate the controversy or remove an uncertainty.*

(Emphasis added.) The Missouri Supreme Court explained that: "Section 1 of the Uniform Act, which confers the general power to declare 'rights, status and other legal relation[s]', and section 5 which provides that the enumeration in sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in section 1. . . ." *Temm,* 191 S.W.2d at 632; see *In re Dahl's Estate,* 196 Or. 249, 248 P.2d 700, 702 (1952) ("[S]ections [2 to 4 do] not limit or restrict the exercise of the general powers conferred in [section 1], in any proceedings where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty."). Because the power of the courts to declare rights, status and other legal relations is not limited by section 2, this "would seem to make it clear that oral contracts may be passed upon." *Temm,* 191 S.W.2d at 632. Missouri only limits a court's ability to pass upon an oral controversy by requiring the existence of a justiciable controversy ripe for decision. *Keiser v. Wiedmer,* 263 S.W.2d 63, 66 (Mo.App.1954). Relying on section 5's language, Oregon, which uses similar reasoning to Missouri, requires only that the proceeding "terminate the controversy or remove uncertainty." *In re Dahl's Estate,* 248 P.2d at 702.

The West Virginia Supreme Court took a related approach in *Lorenze,* 305 S.E.2d at 328. The *Lorenze* Court first found section 2 ambiguous. The court reasoned that the section originally speaks of the court's ability to declare rights under a "written contract" and then turns to "rights and duties arising under a 'contract,'" without employing in this second context the qualifier 'written.'" *Id.*

To resolve the ambiguity created by the differing language, the West Virginia Supreme Court turned to the purpose of the act and the "substantial accord in the case law from other jurisdictions. . . ." *Id.* First, the *Lorenze* Court noted the purpose of the act is remedial, i.e., "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and the act mandates that the language contained therein be "liberally construed and administered." *Id.* This indicates that any ambiguity should be resolved in favor of granting declaratory relief. *Id.; see In re Dahl's Estate,* 248 P.2d at 702 (allowing the adjudication of title to property based on an oral contract in part because the "[a]ct itself is declared to be remedial and mandates a liberal construction and administration."). Second, the *Lorenze* Court turned to the substantial harmony among other jurisdictions allowing a declaration of rights in oral contract disputes, including: Alabama, Alaska, Arkansas, California, Florida, Indiana, Iowa, Louisiana, Michigan, Missouri, Montana, Ohio, New York, South Dakota, Texas, and Utah. *Lorenze,* 305 S.E.2d at 328. In light of these two considerations, the *Lorenze* Court concluded any person "whose rights, status or other legal relations are affected by an oral contract may obtain a declaration of those rights, status, or other legal relations" under section 2. *Id.*

A minority of states either drastically limit when affected persons can seek a declaration of rights arising under oral contracts or prohibit them altogether. Montana takes a limited approach. Although the Montana Supreme Court determined that nothing in section 2 "shows any legislative intent to exclude oral contracts" when "a judgment or decree in a declaratory judgment action will terminate the controversy or remove an uncertainty," *Carpenter v. Free,* 138 Mont. 552, 357 P.2d 882, 883 (1960), trial courts only have the discretion to hear oral contract disputes when the existence and terms of an oral contract are admitted by all of the parties. *State ex rel. Indus. Indem. Co. v. Dist. Court,* 169 Mont. 10, 544 P.2d 438, 440 (1975); *Mahan v. Hardland,* 147 Mont. 78, 410 P.2d 156, 159 (1966).

The Montana Supreme Court limited its holding because the state courts deny declaratory relief when the action requires a determination of disputed facts: "ordinarily a court will refuse a declaratory judgment which can be made only after a judicial investigation of disputed facts . . . ." *State ex rel. Indus. Indem. Co.,* 544 P.2d at 440 (citing 26 C.J.S. Declaratory Judgments § 16, p. 81). Determining the existence and terms of an

oral contract requires a trial court to make a disfavored judicial investigation of disputed facts. Accordingly, Montana prohibits declaratory relief in such situations. *Id.; Mahan*, 410 P.2d at 159.

We disagree with the reasoning of the Montana court. Proceedings under the CUDJL may include factual determinations. The CUDJL specifically provides: "When a proceeding under this article involves the determination of an issue of fact, such an issue may be tried and determined in the same manner as issues of fact [sic] are tried and determined in other civil actions in the court in which the proceeding is pending." § 13–51–113. *See O'Herron v. State Farm Mut. Auto. Ins. Co.*, 156 Colo. 164, 171, 397 P.2d 227, 230 (1964). Thus, factual issues may be decided in declaratory actions pursuant to the mechanism outlined by the CUDJL. The Montana Supreme Court's reasoning is inapplicable here because the CUDJL recognizes that factual determinations are appropriate in declaratory actions when the trial court may otherwise issue relief.

Additionally, Petitioners read *Superior Dairy, Inc. v. Stark County Milk Producers' Ass'n*, 89 Ohio App. 26, 100 N.E.2d 695 (1950), to prohibit declaratory judgments in all cases arising under oral contracts. *See* 22A Am.Jur.2d *Declaratory Judgments* § 121 (2005) (also interpreting *Superior Dairy, Inc.* to prohibit declaratory relief in oral contract disputes). In that case, the plaintiff sought a declaration of rights under an implied contract to deliver milk after a dispute in which the plaintiff acquiesced to the defendants' demands that he stop discounting milk to certain customers. A division of the Ohio court of appeals declined to issue declaratory relief in the oral contract dispute. *Superior Dairy, Inc.*, 100 N.E.2d at 698. Petitioners suggest the refusal to grant declaratory relief in that instance illustrates that Ohio denies relief in all controversies involving oral contract disputes.

We find Petitioners' interpretation of *Superior Dairy, Inc.* unpersuasive. The opinion does not conclude that oral contract disputes are uniformly outside the purview of the act. Instead, the court reasoned:

"where the declaration will neither terminate the controversy nor remove an uncertainty, [section 2 is] a limitation on [section 5]." *Id.* at 697. Thus, when a declaration would terminate a controversy or remove an uncertainty, section 2 does not necessarily act as a limitation on the trial court's discretion, and a trial court may hear oral contract disputes. *See Carpenter*, 357 P.2d at 884 (interpreting *Superior Dairy, Inc.* similarly). Any other interpretation of *Superior Dairy, Inc.* would be premature because the court specifically found a declaratory judgment would "[c]ertainly not" terminate the controversy or remove uncertainty in that case. *Id.* at 698.

This interpretation is supported by *Gem City Eng'g Co. v. George M. Caruana Assoc., Inc.*, No. 6087, 1979 WL 208405, at *34 (Ohio App. April 26, 1979) (unpublished opinion). In *Gem City*, a different division of the court of appeals held that trial courts cannot refuse to issue declaratory relief in oral contract disputes when relief would terminate a controversy or remove an uncertainty.

There is substantial harmony among the states in affording declaratory relief in oral contract disputes. *See Lorenze*, 305 S.E.2d at 328. Cases that appear to support a contrary conclusion are limited or unpersuasive to our inquiry. The Ohio case cited by Petitioners does not necessarily prohibit declaratory judgments in oral contract disputes where relief would terminate the controversy or eliminate an uncertainty. *Superior Dairy, Inc.*, 89 Ohio App. 26, 100 N.E.2d 695; *cf. Gem City Eng'g Co.*, 1979 WL at *34. Montana's refusal to permit declaratory relief in certain oral contract disputes is not persuasive to us because Montana denies declaratory relief whenever the trial judge must engage in a fact-intensive inquiry. *State ex rel. Indus. Indem. Co.*, 544 P.2d at 440. The need for a fact-intensive inquiry does not prohibit declaratory relief in Colorado. *O'Herron*, 156 Colo. at 171, 397 P.2d at 230.

## 2. The Federal Approach

The CUDJL also directs us to harmonize our interpretation of the act, as far as possible, with the approach taken by the federal judiciary. § 13–51–104. The federal judicia-

ry did not enact the Uniform Act, however, so we must first determine if the federal court's reasoning is applicable to our inquiry.

In determining whether to grant declaratory relief, the federal courts weigh two questions originally proposed by Professor Borchard, the co-writer of the Uniform Act. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994); *see White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 168 (4th Cir.1990); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir.1987); *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986); *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984); *Metro. Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 62 (1st Cir. 1984); *President v. Vance*, 627 F.2d 353, 364 n. 76 (D.C.Cir.1980); *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969). Under this discretionary test, a court must inquire into whether relief will clarify or settle legal relations and terminate uncertainty:

> Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so.

*Mhoon*, 31 F.3d at 983.

Colorado trial courts also utilize these discretionary considerations in determining whether to issue declaratory relief. *See People ex rel. Inter-Church Temperance Movement of Colo. v. Baker*, 133 Colo. 398, 404, 297 P.2d 273, 277 (1956). Accordingly, the federal court's allowance or refusal to grant declaratory judgments in oral contract disputes under the discretionary test aids our inquiry.

The federal courts have routinely used the test in determining whether to grant declaratory relief in written contract disputes. *See, e.g., Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1275 (10th Cir.1989). Yet, nothing in the test's considerations limits declaratory actions to written contracts or otherwise restricts the subject matter. In fact, declaratory relief is granted in all kinds of contract disputes, so long as the action meets the discretionary test. Thus, when a litigant alleges that a declaration of rights in an oral contract dispute will clarify legal relations and terminate uncertainty, the federal courts have afforded declaratory relief. *See, e.g., Transit Advertisers v. N.Y., N.H. & H.R. Co.*, 194 F.2d 907 (2d Cir.1952); *Walling v. Green Head Bit & Supply Co.*, 138 F.2d 453 (10th Cir.1943).

The legislature intended that we interpret and construe the CUDJL "as to effectuate its general purpose to make uniform the law of those states which enact it and to harmonize ... with federal laws and regulations." § 13–51–104. The substantial harmony in affording declaratory relief over oral contract controversies strongly indicates the CUDJL permits declaratory judgments in such situations.

### C. Conclusions of Law

We agree with the reasoning of our sister states that section 13–51–109, known as section 5 above, directly addresses Petitioners' argument that section 13–51–106 limits declaratory relief to written contracts. *Temm*, 191 S.W.2d at 632; *In re Dahl's Estate*, 248 P.2d at 702. That section states:

> The enumeration in *sections 13–51–106 to 13–51–108 does not limit or restrict the exercise of the general powers conferred in section 13–51–105*, in any proceeding where declaratory relief is sought, *in which a judgment or decree will terminate the controversy or remove an uncertainty.*

§ 13–51–109 (emphasis added). Section 13–51–109 provides that the broad power of the courts to "declare rights, status, and other legal relations" as recognized in section 13–51–105, is not limited by the language of section 13–51–106 when a declaratory judgment would "terminate the controversy or remove an uncertainty." § 13–51–109.

Thus, whether the trial court has the ability to declare the existence of an oral contract and, if one exists, any rights or obligations contained therein, is not dependent on a resolution of the inherent ambiguity of section 13–51–106 read in isolation. Instead, it depends on whether the dispute meets the re-

quirements contained in section 13–51–109. Under section 13–51–109, a trial court may resolve oral contract disputes when a declaration of rights, status, and other legal relations will "terminate the controversy or remove an uncertainty."

■ As noted by the West Virginia Supreme Court, the remedial purpose of the CUDJL also supports this interpretation. *See Lorenze*, 305 S.E.2d at 328. Colorado enacted the CUDJL in 1923 for a remedial purpose: "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other relations." Ch. 98, 1923 Colo. Sess. Laws 26871; *see* § 13–51–102, C.R.S. (2005). The legislature intended the act to "provide a ready and speedy remedy, in cases of actual controversy, for determining issues and adjudicating the legal rights, duties, or status of the respective parties, before controversies with regard thereto lead to the repudiation of obligations, the invasion of rights, and the commissions of wrongs." *Baker*, 133 Colo. at 404, 297 P.2d at 277. Permitting declaratory relief in oral contract disputes furthers this remedial purpose by providing a quick and efficient mechanism to eliminate potentially expensive and time consuming controversies. Furthermore, the judicial declaration of rights arising under an oral contract prevents unnecessary loss and litigation, while stabilizing contractual relations. Thus, the purposes of the CUDJL are furthered by permitting a trial court to exercise its discretion in granting declaratory judgments in oral contract disputes.

As previously explained, our conclusion that trial courts may issue declaratory judgments in oral contract disputes when relief would "terminate the controversy or remove an uncertainty" is supported by traditional principles of statutory interpretation. The plain language of the act as a whole directs us to permit trial courts to "declare rights, status, and other legal relations," section 13–51–105, when a declaration would terminate controversy or eliminate insecurity. The legislature further directed that we liberally construe the act to further its remedial purpose of granting a ready and speedy remedy to actual controversies. *See Baker*, 133 Colo. at 404, 297 P.2d at 277. Our determination is bolstered by the similar interpretation of the states and federal courts. *See* § 13–51–104.

Our precedent is also consistent with this reading of the statute.[3] In *Highland Sales Co. v. Robertson*, 104 Colo. 222, 90 P.2d 2 (1939), the plaintiff sought a declaratory judgment under the CUDJL establishing he had an oral contract with the defendants. *Id.* at 226–27, 90 P.2d at 4–5. Upon review, this court concluded that no oral contract was formed. *Id.* at 228, 90 P.2d at 5. By reviewing whether an oral contract existed, this court implicitly found that an action for declaratory relief was an appropriate means to resolve the parties' rights and obligations. Thus, our precedent supports today's holding that a declaratory judgment action properly encompasses the determination of whether an oral contract exists and the parties' rights contained therein.

### III. Application

■ In this case, Berenergy seeks to sell its stock but is unable to do so, ostensibly due to the uncertainty surrounding its legal relationships with the Beren Sons' Corporations. To alleviate this ambiguity, Berenergy is looking for a declaration of whether an enforceable oral contract exists with the Beren Sons' Corporations. If a contract exists, Berenergy is further seeking a pronouncement of its rights and obligations under it, including its ability to cancel the contract.

■ The trial court has discretion in determining whether to afford declaratory

---

**3.** The Beren Sons' Corporations allege that our precedent requires us to find that oral contract disputes are beyond the discretion of the trial courts because we have previously stated: "The primary purpose of the declaratory judgment procedure is to provide a speedy, inexpensive, and readily accessible means of determining actual controversies which depend on the validity or interpretation of some *written instrument* or law." *Toncray v. Dolan*, 197 Colo. 382, 384, 593 P.2d 956, 957 (1979) (emphasis added). Our statement, however, did not provide an exclusive list of instances where declaratory relief is appropriate. *See, e.g.*, § 13–51–108(1)(b), C.R.S. (2005) (permitting declaratory judgments to direct executors, administrators, and trustees to complete or refrain from completing any particular act).

relief. *Troelstrup v. Dist. Court,* 712 P.2d 1010, 1012 (Colo.1986). The trial court should exercise that discretion in oral contract disputes where a declaration of rights, status, or legal relations would "terminate the controversy or remove an uncertainty." § 13–51–109; *see* §§ 13–51–105, 13–51–110. Declaratory relief is not limited to cases where the existence of an oral contract and the terms contained therein are admitted by all of the parties. Instead, a court may make the factual determination as to whether a contract exists and, if so, the terms contained therein. *See* § 13–51–113; *American Family Mut. Ins. Co. v. Bowser,* 779 P.2d 1376, 1379 (Colo.App.1989) (courts may make factual determinations in declaratory judgment actions). A favorable exercise of that discretion is warranted when (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Baker,* 133 Colo. at 404, 297 P.2d at 277. If neither "result can be accomplished, the court should decline to render the declaration prayed [for]." *Id.*

Here, Berenergy seeks to terminate the controversy between Berenergy and the Beren Sons' Corporations by clarifying whether a contractual relationship exists between the parties and defining the terms of such a relationship. The trial court abused its discretion in failing to review Berenergy's declaratory judgment action. *See Troelstrup,* 712 P.2d at 1012. Declaratory relief will serve the useful purpose of clarifying the parties rights, status, or legal relations, by establishing whether a contractual relationship exists. It will terminate the controversy and remove the uncertainty between the parties by defining the terms of any such relationship, including establishing whether Berenergy is obligated to continue charging $150.00 per well per month in overhead. Armed with this declaration, Berenergy can determine the fair market value of the corporation and attempt to sell the corporation according to the mandate issued by the probate court. Similarly, the Beren Sons can decide whether to retain their interests in the Beren Sons' Corporations or sell their interests. Accordingly, the trial court abused its discretion in failing to render declaratory relief in this situation.

## IV. Conclusion

We remand to the trial court for its consideration of Berenergy's motion for declaratory judgment.

Justice EID, specially concurs.

Justice EID, specially concurring.

The majority first finds that section 106 is ambiguous as to whether it limits declaratory relief to written contracts, and then it employs a host of interpretive aids in order to resolve that ambiguity. For example, it traverses the caselaw of other jurisdictions with an eye toward harmonizing our law with theirs. Maj. op. at 256. Because I think this is a plain language case, I would not find it necessary to resort to such secondary interpretive aids.

I would start my analysis not with section 106, as the majority does, but rather with section 13–51–109, which states that the enumeration in section 106 is not a limitation on a court's authority to issue declaratory relief that "will terminate the controversy or remove an uncertainty." § 13–51–109, C.R.S. (2005). Section 13–51–109 negates the statutory construction maxim *expressio unius est exclusio alterius*-the expression of one thing implies the exclusion of the other. *See, e.g., Beeghly v. Mack,* 20 P.3d 610, 613 (2001) (employing the maxim); *Taylor v. Canterbury,* 92 P.3d 961, 969 (Colo.2004) (Coats, J., dissenting) (same). Section 109 thus makes clear that section 13–51–106 is an illustrative, not an exclusive, enumeration of instances in which courts may issue declaratory relief that "will terminate the controversy or remove an uncertainty." In so doing, it directly refutes petitioners' argument, as phrased by the majority, that "the express inclusion of 'written contracts' [in section 106] implies the exclusion of oral contracts." Maj. op. at 255. As the majority eventually concludes, any ambiguity in section 106 is somewhat beside the point because the section is not a limitation on the court's authority in any event. *Id.* at 260.

We should not rest our decisions on ambiguity where plain language resolves the case.

Here, of course, the result is the same under either approach, but in other cases the difference could be outcome-determinative. Even in this case, the analysis differs in an important way. After finding an "inherent ambiguity" in section 106, the majority turns to § 13–51–104, C.R.S. (2005), which instructs that the Colorado Uniform Declaratory Judgments Law be construed to make uniform the laws of the states and, to the extent possible, in harmony with federal law. After surveying the caselaw of other jurisdictions, maj. op. at 256–59, the court sides with the "majority reasoning." *Id.* at 256. Under my analysis, by contrast, I find the caselaw from other jurisdictions instructive not because there are more cases on one side of the "written contract" question than the other, but because other courts have looked to their jurisdiction's counterpart to section 109 and come to the same conclusion about its plain meaning. *See, e.g., Temm v. Temm,* 354 Mo. 814, 191 S.W.2d 629, 632–33 (1945); *In re Dahl's Estate,* 196 Or. 249, 248 P.2d 700, 702 (1952). Declaratory judgments are permitted in cases such as this one not because other jurisdictions permit them, but because the language of the statute dictates that result.